**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4825

BRIAN S. GRIMMOND,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Samuel G. Wilson, Chief District Judge.
(CR-93-58)

Argued: December 1, 1997

Decided: March 6, 1998

Before LUTTIG, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Luttig joined. Judge Motz wrote an opinion concurring
in the judgment.

_____

**COUNSEL**

**ARGUED:** David Leonard Heilberg, LAW OFFICE OF DAVID L.
HEILBERG, Charlottesville, Virginia, for Appellant. Anthony Paul
Giorno, Assistant United States Attorney, Roanoke, Virginia, for
Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney,
Kenneth M. Sorenson, Assistant United States Attorney, Roanoke,
Virginia, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

In April 1993, a federal grand jury indicted Brian Grimmond on gun and drug charges. Prior to trial, Grimmond, in a series of motions, moved to (1) dismiss the indictment because the 35-month delay between his indictment and his arraignment violated his Sixth Amendment right to a speedy trial; (2) exclude evidence of his prior crimes, wrongs, or other bad acts; and (3) quash the jury based upon an alleged violation of Batson. The district court denied all of Grimmond's motions and he was subsequently convicted by a jury. Grimmond appeals, raising the issues presented in his three unsuccessful motions. Finding no error, we affirm.

I.

In the spring of 1992, Grimmond and Jamal Heath began selling crack cocaine on the street in front of Heath's apartment in Langley Park, Maryland. Almost immediately, the two were the victims of an attempted armed robbery. Although they did not lose any drugs, both were shot at during the attempted robbery. Grimmond had two bullets pass through his clothes without striking him. Heath was shot in the hand. As a result of this attack, the two purchased a semi-automatic assault weapon (Mac-11) for protection.

With their Mac-11 hanging in a nearby tree, Grimmond and Heath returned to selling crack on the street in front of Heath's apartment. Within days, however, Grimmond's and Heath's drug dealing was once again interrupted; this time by the police. Officers in the Prince George's County Police Department found a vial containing several rocks of crack cocaine, as well as the Mac-11, hidden in the foliage in front of Heath's apartment.

Based upon their inability to sell crack effectively in Langley Park, the two decided to move their operation to Charlottesville, Virginia. Upon their arrival in Charlottesville, the pair pooled their money to buy crack. In addition to selling crack, the drug was used by Grimmond and Heath as a form of currency. Among other things, they

2

moved into Doug Kelly's house in exchange for crack, rented cars in exchange for crack, and even purchased a 9mm semi-automatic pistol (Tech-9) and a .380 semi-automatic pistol (Lorcin) in exchange for crack.

On June 27, 1992, Heath, Kelly, and Corey Kinney met J.J. Feaster. According to Heath, Feaster was giving him looks that made him feel unsafe. As a result, Heath and his friends decided to go back to Kelly's house via the neighborhood liquor store. When Heath arrived at Kelly's house he told Grimmond about the incident with Feaster, and Kinney added that he thought Feaster was the guy who had previously assaulted Grimmond's sister. Grimmond and Heath left Kelly's house with the Lorcin. After locating Feaster, Grimmond shot and killed him.

That evening, Grimmond, Heath, and Kinney left Charlottesville and drove to Langley Park, Maryland. After spending the night in Heath's apartment, the group spent the next day traveling around the Washington, D.C., area where they visited with family and met several of Grimmond's and Heath's drug-dealing associates. Later that evening, while driving around Washington, D.C., Grimmond asked Kinney to change seats with him. As Kinney stepped out of the car, Grimmond shot and critically wounded him. According to Heath, they had decided to kill Kinney because he "knew too much" about the Feaster slaying.

Grimmond and Heath were subsequently arrested. On April 22, 1993, they were indicted on federal gun and drug charges. In addition to the federal indictment, the Commonwealth of Virginia charged Grimmond and Heath with the murder of Feaster and the District of Columbia charged them with the attempted murder of Kinney. On June 3, 1993, Grimmond was convicted of Feaster's murder in Charlottesville Circuit Court and sentenced to 45 years. Grimmond was then transferred to the District of Columbia where on September 16, 1993, he was convicted of assault with intent to kill Kinney. On November 9, 1993, he was sentenced to a term of twelve years to life.

Heath, for his role in the shooting of Kinney, was convicted on June 30, 1994, of assault with a deadly weapon. Heath was then transferred from Washington, D.C., to the Commonwealth of Virginia

3

where on October 5, 1995, he was convicted of Feaster's murder. On December 6, 1995, Heath was sentenced to 20 years. On February 15, 1996, the United States District Court for the Western District of Virginia issued a writ of habeas corpus ad prosequendum for Grimmond and Heath. On March 8, 1996, Grimmond and Heath were arraigned on the federal charges.

In mid-March, Grimmond moved to dismiss the indictment alleging a violation of his rights to due process and a speedy trial. In a written opinion, the district court denied Grimmond's motion to dismiss. Grimmond later filed a motion in limine to prevent the introduction of his prior crimes, wrongs, or other bad acts. The district court denied this motion as well. Finally, after voir dire, Grimmond made a motion based upon an alleged Batson violation. This motion was also denied.

Prior to trial, Heath entered into a plea agreement with the Government in which he agreed to testify against Grimmond. On July 23, 1996, Grimmond's trial began. In addition to Heath, the jury heard testimony about Grimmond's criminal activities from Kelly and Kinney. After a short period of deliberation, the jury found Grimmond guilty of (1) conspiracy to distribute cocaine, conspiracy to carry or use a firearm during and in relation to a drug trafficking crime, and conspiracy to possess a firearm by a convicted felon, see 18 U.S.C.A. § 371 (West Supp. 1997); (2) conspiracy to distribute cocaine base, see 21 U.S.C.A. § 841(a)(1), (b)(1)(A)(iii) (West 1981 & Supp. 1997); (3) carrying or using a firearm during and in relation to a drug trafficking crime, see 18 U.S.C.A. § 924(c)(1) (West Supp. 1997); and (4) possession of a firearm by a convicted felon, see 18 U.S.C.A. § 922(g) (West Supp. 1997).

On appeal, Grimmond raises the same three issues he presented in his pre-trial motions. Specifically, Grimmond contends that the 35-month delay between his indictment and his arraignment violated his right to a speedy trial, that the district court abused its discretion in allowing the Government to introduce evidence of his prior crimes, and that the prosecutor's use of a peremptory strike to exclude a black juror from the jury violated Batson v. Kentucky, 476 U.S. 79 (1986). We address Grimmond's arguments in turn.

4

II.

Grimmond contends that the 35-month delay between his indict-
ment and his arraignment violated his Sixth Amendment[1] right to a
speedy trial.[2] The Sixth Amendment guarantees that, "[i]n all criminal
prosecutions, the accused shall enjoy the right to a speedy and public
trial." U.S. Const. amend. VI. The Supreme Court has identified four
factors that should be balanced in determining whether a defendant
has been denied his Sixth Amendment right to a speedy trial. See
Barker v. Wingo, 407 U.S. 514 (1972). These factors are (1) whether
the delay was uncommonly long; (2) the reason for the delay; (3)
whether the defendant asserted his right to a speedy trial; and (4)
whether prejudice resulted to the defendant. Id. at 530; see also
Doggett v. United States, 505 U.S. 647, 651 (1992) (applying the
four-factor test announced in Barker). In order to prevail on his claim,
Grimmond must establish "that on balance, [the] four separate factors
weigh in his favor." United States v. Thomas , 55 F.3d 144, 148 (4th
Cir. 1995).

The first factor also acts as a threshold requirement. See Doggett,
505 U.S. at 651-52. If the delay is not uncommonly long, the inquiry
ends there. See id. at 652 (stating that"by definition, [a defendant]
cannot complain that the government has denied him a`speedy' trial
if it has, in fact, prosecuted his case with customary promptness");
Barker, 407 U.S. at 530 (noting that "[u]ntil there is some delay

_____

**1** Grimmond also contends that the 35-month delay violated his Fifth
Amendment right to due process. See Doggett v. United States, 505 U.S.
647, 655 n.2 (1992) (stating "that a defendant may invoke due process
to challenge delay both before and after official accusation"). Despite
Grimmond's claim, his right to due process has not been violated. "[I]n
order to establish a due process violation, the defendant must show that
the delay `caused him actual prejudice in presenting his defense.'" Jones
v. Angelone, 94 F.3d 900, 906 (4th Cir. 1996) (quoting United States v.
Gouveia, 467 U.S. 180, 192 (1984)). Here, there is simply no evidence
that Grimmond's defense was impaired by the delay. See post at 9-10.
**2** Grimmond does not contend that the 35-month delay violated his
rights under the Speedy Trial Act. See 18 U.S.C.A. §§ 3161-3174 (West
1985 & Supp. 1997) (specifying time limits between arrest, indictment,
and trial, and permissible delays within each period).

which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance"). Here, the district court found, and the Government does not dispute, that a 35-month delay is uncommonly long. We agree. In <u>Doggett</u>, the Supreme Court suggested in dicta that a delay over one year is presumptively prejudicial. 505 U.S. at 652 n.1 (dealing with a delay of eight and one-half years). If so, a delay of 35 months is <u>a fortiori</u> too long. Satisfied that the threshold requirement has been met, we turn to consider the remaining three factors.

First, we must consider the Government's reason for the delay. In so doing, we must keep in mind that "different weights should be assigned to different reasons." <u>Barker</u>, 407 U.S. at 531. The Supreme Court recognizes that some reasons for delaying a trial are improper, <u>e.g.</u>, harassment. <u>See United States v. Marion</u>, 404 U.S. 307, 325 (1971). It should go without saying that improper reasons for delaying a defendant's trial are "weighted heavily against the government." <u>Barker</u>, 407 U.S. at 531. The Supreme Court also recognizes that some reasons for delaying a trial are neutral, <u>e.g.</u>, an understaffed prosecutor's office. <u>See Strunk v. United States</u>, 412 U.S. 434, 436 (1973). Although labeled neutral, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." <u>Barker</u>, 407 U.S. at 531. Finally, the Supreme Court recognizes that some reasons for delaying a trial are valid, <u>e.g.</u>, a missing witness. <u>See id.</u> Valid reasons for delaying a trial are weighted in favor of the Government.**3** <u>See id.</u>

With that background, we turn to the Government's reason for the 35-month delay. When Grimmond and Heath were indicted in April of 1993, the federal government was not the only sovereign interested in the pair's criminal activities. Both had already been charged with first degree murder in the Commonwealth of Virginia. In addition, the District of Columbia had charged them each with assault with intent to kill. When a defendant violates the laws of several different sover-

_____

**3** Of course, finding that the Government's reason is valid does not mean that the defendant's right to a speedy trial has not been violated. This is but one factor in the four-factor balancing test. <u>See Barker v. Wingo</u>, 407 U.S. 514, 533 (1972) (noting that all four factors "must be considered together").

6

eigns, as was the case here, at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile. Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay. Cf. Thomas , 55 F.3d at 150 (stating that "[t]he need to allow [the defendant] to be prosecuted by the State without interference by the federal government . . .[is] an obvious reason for delaying [the defendant's] federal prosecution").**4**

Grimmond contends, however, that if it was the Government's policy to wait until all state prosecutions were completed, he should have been tried soon after he was sentenced in the District of Columbia on November 9, 1993. In a different case we might agree. Here, however, Grimmond was indicted with Heath, whose state prosecutions were not completed until December of 1995. It is well established that "[b]arring special circumstances, individuals indicted together should be tried together." United States v. Brugman , 655 F.2d 540, 542 (4th Cir. 1981); see also United States v. Shuford , 454 F.2d 772, 775 (4th Cir. 1971) (same). Of course, a defendant's invocation of his Sixth Amendment right to a speedy trial would be just the type of "special circumstance" that would trump the general rule. Absent such a request, or some other "special circumstance," e.g., evidence that joinder was improper,**5** waiting for another sovereign to finish prosecuting a codefendant is a valid reason for delay.**6** Cf. United States v.

_____

**4** In Thomas we noted that

> [t]o do otherwise would be to mire the state and federal systems
> in innumerable opposing writs, to increase inmate transportation
> back and forth between the state and federal systems with conse-
> quent additional safety risks and administrative costs, and gener-
> ally to throw parallel federal and state prosecutions into
> confusion and disarray.

Id. at 150-51.

**5** The test for joinder under Rule 8(b) of the Federal Rules of Criminal Procedure is whether defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions." Fed. R. Crim. P. 8(b).

**6** Although the concurrence does not disparage our analysis of the second Barker factor as dicta, it does not join it either. See post at 19 (stating that "the Government's reason for at least a portion of the delay is

7

Annerino, 495 F.2d 1159, 1162-63 (7th Cir. 1974) (holding that a delay caused by the Government's desire for a single trial deserves some deference); see also Barker, 407 U.S. at 531 (stating that the unavailability of a witness is a valid reason for delaying a trial).

It is undisputed that Grimmond failed to assert his right to a speedy trial until March of 1996, four months before the start of his trial.[7] Grimmond contends that his failure to assert his right earlier should not be weighted against him, however, because he had no attorney at the time to counsel him. It is true that this Court may "attach a different weight to a situation in which the defendant knowingly fails to object . . . from a situation in which no counsel is appointed." Barker, 407 U.S. at 529. Nevertheless, we decline to do so here. First, there is absolutely no evidence that Grimmond requested (or was denied) counsel on the federal charges. Second, and even more telling, when Grimmond received the detainer informing him of the federal charges he had state-appointed counsel representing him on the charges pending in the Commonwealth of Virginia.[8] As such, Grimmond's assertion that he had no attorney at the time to counsel him is simply incorrect. Based upon the fact that Grimmond did not request counsel on the federal charges and had counsel on the pending state charges, we conclude that his failure to assert his right to a speedy trial should be weighted in favor of the Government.[9] See Barker, 407 U.S. at 532

_____

valid under the rationale of United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995)"). We note that the Thomas rationale validates only the first six and one-half months of the delay. The concurrence conveniently ignores the twenty-eight and one-half months attributable to the Government's desire to try Grimmond and Heath together.

[7] The four month delay between Grimmond's arraignment and his trial is attributable to his own motion to continue the trial date.

[8] The concurrence charges that the majority has engaged in improper fact finding. See post at 20. Of course, we have done no such thing. We simply noted that Grimmond was represented by state-appointed counsel when he received notice of the federal charges. Although the concurrence may disagree with the legal significance we have attached to that fact, the fact itself is not in dispute.

[9] The concurrence contends that "the appointment of counsel in connection with state charges does not per se defeat a defendant's claim that

8

(emphasizing that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial").

The final factor is prejudice. Prejudice "should be assessed in the light of the interests . . . the speedy trial right was designed to protect." Id. at 532. These interests include: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. See Smith v. Hooey, 393 U.S. 374, 378 (1969) (citing United States v. Ewell, 383 U.S. 116, 120 (1966)); see also Stephen A. Saltzburg & Daniel J. Capra, American Criminal Procedure 852 (5th ed. 1996) (noting same three interests). Of these, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532; see also Doggett, 505 U.S. at 654 (same).

The first two interests need not detain us long. Although Grimmond was incarcerated during the 35-month period between his indictment and his arraignment, his pretrial incarceration was a result of his shooting Feaster and Kinney. When, as here, a defendant is lawfully incarcerated for reasons not related to the pending charges and makes no credible showing that either his present or potential sentence will be substantially affected by the delay, see Hooey, 393 U.S. at 378, we hold that there is simply no way the pretrial incarceration can be deemed oppressive.**10** As to the second interest, Grimmond

_____

he did not know enough to assert his speedy trial right to federal charges." Post at 19. The case upon which the concurrence relies for this proposition, Coleman v. United States, 442 F.2d 150 (D.C. Cir. 1971), more closely supports our position. Like Grimmond, the defendant in Coleman was facing state charges when he received the detainer informing him of the federal charges. See id. at 155. Unlike Grimmond, however, the defendant in Coleman was not represented by state-appointed counsel at the time. See id. Because the defendant was "without counsel," the D.C. Circuit decided that his failure to assert his right to a speedy trial should not be weighted against him. See id. The D.C. Circuit inferred, however, that the appointment of counsel in connection with state charges could defeat a defendant's claim that he did not know enough to invoke his right to a speedy trial.

**10** The concurrence argues that the Supreme Court's decision in Smith v. Hooey, 393 U.S. 374 (1969), "undermines" our holding that a defen-

9

never expressed any anxiety or concern about the federal charges. We are not surprised. Grimmond faced the possibility of the death penalty if convicted of Feaster's murder in Virginia state court. With that cloud hanging over his head, it is likely that any worries related to his impending murder trial, not the federal charges.

Finally, we must consider whether Grimmond's defense was impaired by the delay. We note that Grimmond has not identified any witness that was unavailable as a result of the delay. Nor has he alleged that any witness was unable accurately to recall the events in question. Grimmond does not contend that any exculpatory evidence was lost. Nor has he identified any evidence that was unavailable because of the delay. In sum, there is no evidence that Grimmond's defense was impaired by the delay.

Based on the foregoing analysis of the three interests the Supreme Court has identified for determining prejudice, we cannot identify any

_____

dant already incarcerated on unrelated charges must make a "credible showing" that his pre-trial incarceration adversely affected either his present or potential sentence. See post at 20. We disagree. In Hooey, the Supreme Court did not hold, as the concurrence suggests, that pretrial incarceration is per se prejudicial. See post at 20 (arguing that the defendant in Hooey was not required to make any showing that he was prejudiced by his pre-trial incarceration). Rather, the Supreme Court simply rejected the Texas Supreme Court's per se rule that a person already in prison under a lawful sentence can never suffer from "oppressive" pre-trial incarceration. 393 U.S. at 378. The Supreme Court noted that, in some instances, a defendant's present or potential sentence could be adversely affected by a delay. See id. For example, the pendency of another criminal charge could affect the former by making a defendant ineligible for parole, clemency, or a pardon. See id. at 378 & n.8. A delay could affect the latter by making a defendant ineligible for a concurrent or partially concurrent sentence. See id. at 378 & n.7. With that guidance, the Supreme Court remanded the case to the Texas Supreme Court to determine, in the first instance, whether the defendant was prejudiced by the delay. See id. at 383. Although the Supreme Court did not expressly state what kind of showing the defendant would have to make on remand, we have little difficulty concluding that, at a minimum, the showing must be credible.

10

specific prejudice resulting from the 35-month delay between Grimmond's indictment and arraignment. Similarly, "Grimmond acknowledged at a pre-trial hearing that he could not identify any specific prejudice resulting from the delay." (J.A. at 36.) Accordingly, we conclude that the final Barker factor should be weighted heavily in favor of the Government.

Our review of the four Barker factors convinces us that Grimmond's Sixth Amendment right to a speedy trial was not violated. Although the delay between Grimmond's indictment and his arraignment was uncommonly long, the remaining three factors weigh against Grimmond. See Thomas, 55 F.3d at 148 (noting that to prevail a defendant must establish "that on balance,[the] four separate factors weigh in his favor"). First, the reason for the delay -- to allow the Commonwealth of Virginia and the District of Columbia to prosecute Grimmond and Heath without interference by the federal government -- is indisputably valid. Next, Grimmond did not assert his right to a speedy trial until 4 months prior to trial. Finally, there is simply no evidence that Grimmond was prejudiced by the 35-month delay. We thus affirm the district court's decision to deny Grimmond's Sixth Amendment claim.**11**

_____

**11** The concurrence inexplicably denigrates much of our speedy trial analysis as dicta. See post at 19-21. The analysis the concurrence would like to eliminate provides, as we demonstrate below, the basis for our decision to weigh the last two Barker factors in the Government's favor. Thus, while the concurrence may (and does) argue that the analysis in question is incorrect, it cannot seriously contend that it is dicta.

First, the concurrence contends that our discussion regarding the significance of Grimmond's state-appointed counsel is dicta. Yet, determining how the third Barker factor should be weighted turns, at least in part, on whether Grimmond had counsel to advise him of his right to a speedy trial. See ante at 8-9 (citing Barker , 407 U.S. at 529 (stating that a court may "attach a different weight to a situation in which the defendant knowingly fails to object . . . from a situation in which no counsel is appointed")). Here, it is undisputed that Grimmond was represented by state-appointed counsel when he received the detainer informing him of the federal charges. Although the concurrence may disagree with the legal significance we have attached to that fact, see ante at 8 n.8, it cannot genuinely argue that the rationale for our holding is dicta.

III.

Next, Grimmond contends that the district court abused its discretion in allowing the Government to introduce evidence of his prior crimes. See Fed. R. Evid. 404(b). Although Grimmond fails to specify what evidence violated Rule 404(b), he presumably objects to the evidence regarding his involvement in the shootings of Feaster and Kinney. A district court's evidentiary rulings are reviewed under the narrow abuse of discretion standard. See United States v. Sanchez, 118 F.3d 192, 195 (4th Cir. 1997).

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), however, does not end there. It expressly states that evidence of other crimes, wrongs, or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Moreover, it is well established that that list "is illustrative rather than exclusionary." United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995); see also United States v. Stockton, 788 F.2d 210, 219 n.15 (4th Cir. 1986) (noting that impeachment is a proper use of "other crimes" evidence, even though not listed in Rule 404(b)). In fact, by its own terms, Rule 404(b) expressly only excludes evidence of other crimes, wrongs, or acts when it is used to prove a defendant's bad character or to "show action in conformity therewith." See, e.g., Powers, 59 F.3d at 1464 (recognizing "Rule 404(b) as an inclusive rule, admitting

_____

Similarly, the concurrence contends that we need not determine whether Grimmond's pretrial incarceration was "oppressive" because Grimmond "has utterly failed to demonstrate any prejudice from the delay." Post at 19. Whether Grimmond was prejudiced by the delay turns, at least in part, on whether his pretrial incarceration was "oppressive." See ante at 9 (citing Smith v. Hooey, 393 U.S. 374, 378 (1969) (noting that the prevention of oppressive pretrial incarceration is one of the three interests the speedy trial right was designed to protect)). Thus, despite the concurrence's contentions to the contrary, our conclusion that Grimmond's pretrial incarceration was not "oppressive" is essential to our conclusion that Grimmond was not prejudiced by the 35-month delay.

12

all evidence of other crimes or acts except that which tends to prove only criminal disposition" (internal quotation marks omitted)); United States v. Russell, 971 F.2d 1098, 1106 (4th Cir. 1992) (same); United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988) (same); United States v. Percy, 765 F.2d 1199, 1203 (4th Cir. 1985) (same).

Grimmond was charged with, among other things, being a felon in possession. See 18 U.S.C.A. § 922(g) (West Supp. 1997). That offense has two elements: (1) possession of a firearm and (2) a prior felony conviction. Although Grimmond's stipulation that he was a convicted felon barred the Government from introducing evidence of his predicate felony conviction, see Old Chief v. United States, 117 S. Ct. 644, 649 (1997), the Government still had to prove that he possessed a firearm. In light of the Government's burden in this case, it is clear that the Government did not introduce evidence that Grimmond shot Feaster and Kinney to prove his bad character or to "show action in conformity therewith." Fed. R. Evid. 404(b). Rather, the Government introduced this evidence because it irrefutably establishes that Grimmond possessed a firearm, an essential element of § 922(g).**12**

It is well established that "[e]vidence of prior bad acts is admissible if it is . . . necessary to show an essential part of the crime." Powers, 59 F.3d at 1464; see also United States v. Kennedy, 32 F.3d 876, 885-86 (4th Cir. 1994) (holding that evidence of "other crimes" is admissible to provide context of the charged offense); United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980) (holding that evidence of other crimes is admissible "when such evidence`furnishes part of the context of the crime'"). In fact, when "other crimes, wrongs, or acts" evidence is relevant to establishing an element of the offense, Rule 404(b) is not even implicated. See United States v. Martin, 773 F.2d 579, 582 (4th Cir. 1985) (holding that Rule 404(b) did not bar evidence of income from illegal bookmaking activities when defendant

_____

**12** Grimmond was also charged with carrying or using a firearm during and in relation to a drug trafficking crime. See  18 U.S.C.A. § 924(c) (West Supp. 1997). As a result, evidence that Grimmond shot two individuals also established an essential element of§ 924(c). See Bailey v. United States, 116 S. Ct. 501, 508 (1995) (stating that the most obvious understanding of "use" is firing a firearm).

13

charged with tax evasion); see also United States v. Swiatek, 819 F.2d 721, 729 (7th Cir. 1987) (holding that Rule 404(b) did not bar evidence of a prior conviction when defendant charged with violating 18 U.S.C.A. § 922(g)); United States v. Lamp , 779 F.2d 1088, 1095 (5th Cir. 1986) (holding that Rule 404(b) did not bar evidence of income from illegal narcotics dealing when defendant charged with tax evasion). Because the challenged evidence was used to establish an element of the offense with which Grimmond was charged, we hold that it did not constitute "other crimes" evidence within the meaning of Rule 404(b).

Although not excluded by Rule 404(b), evidence of Grimmond's other crimes may nevertheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Grimmond contends that the Supreme Court's recent decision in Old Chief, 117 S. Ct. at 644, should guide our analysis. Like Grimmond, the defendant in Old Chief was charged with violating § 922(g). See id. at 647. Fearing unfair prejudice if the jury learned the nature of his prior conviction, Old Chief sought to stipulate to his status as a felon. See id. at 647-48. The Government refused to join the stipulation and the district court agreed, ruling that the Government was entitled to introduce evidence of Old Chief's prior conviction. See id. at 648. A sharply divided Supreme Court reversed. The Court held that a district court abuses its discretion when it refuses to allow a defendant to stipulate to his status as a felon. See id. at 649. Relying on Rule 403, the Court stated that the prejudicial effect of introducing Old Chief's prior conviction substantially outweighed its probative value. See id. at 650-51. In particular, the Court was concerned about the risks traditionally associated with propensity evidence, "`that a jury will convict for crimes other than those charged -- or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'" Id. at 650 (quoting United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982)).

Grimmond's reliance on Old Chief is misplaced for several reasons. First, Grimmond was allowed to stipulate to his status as a convicted felon. As a result, the Government did not introduce any evidence concerning his prior felony.13  Second, even if the holding in

_____

13 Grimmond and the Government stipulated that Grimmond "was convicted on December 19, 1985, of a crime punishable by imprisonment for

14

Old Chief applied to the "possession" element of § 922(g), which it does not, there is no evidence that Grimmond offered to stipulate to possessing a firearm.**14** Had Old Chief not been willing to stipulate to his status as a convicted felon, there is absolutely no question but that the Government could have introduced direct proof of his prior conviction. See, e.g., Swiatek, 819 F.2d at 729 (holding that Rule 404(b) did not bar evidence of a prior conviction when defendant charged with violating 18 U.S.C.A. § 922(g)). Because that evidence would have directly established an element of the offense, there would also be no question whether its probative value was substantially outweighed by its prejudicial effect.

The same can be said of the evidence the Government introduced to establish that Grimmond possessed a firearm. That evidence directly established an element of the offense. Perhaps Grimmond's case was damaged when the jury heard evidence that he shot two individuals. However, damage to a defendant's case is not a basis for excluding probative evidence. And for good reason. Evidence that is highly probative invariably will be prejudicial to the defense. See United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997) (noting that while evidence "was prejudicial, it was only prejudicial because it was so highly probative"); 2 Weinstein's Federal Evidence, § 404.21[3][b] (2d ed.) (noting that prejudice "under Rule 403 does

_____

a term exceeding one year in the Superior Court of the District of Columbia." (J.A. at 101.) The parties also stipulated that Grimmond's "right to possess a firearm [had not been] restored by either the Commonwealth of Virginia or the United States Government." (J.A. at 102.)
**14** We believe that the Supreme Court intended its decision in Old Chief to be limited to stipulations involving a defendant's status as a convicted felon. Otherwise, the Court, without explanation, reversed a longstanding series of cases. See, e.g., Singer v. United States, 380 U.S. 24, 35 (1965) (stating that "it has never been seriously suggested that [a defendant] can . . . compel the Government to try the case by stipulation"). It would be "quite remarkable for [the Supreme] Court both to have held [invalid] a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so." United States v. Ursery, 116 S. Ct. 2135, 2147 (1996). Of course, after stipulating to his status as a convicted felon Grimmond could have stipulated to the second element of § 922(g) as well. It's called a guilty plea.

15

not mean the damage to a defendant's case that results from the legitimate probative force of the evidence"). It is worth remembering that the touchstone for excluding evidence under Rule 403 is not prejudice, but "unfair" prejudice. Moreover, unfair prejudice must "substantially" outweigh the probative value of the evidence. We have no difficulty in concluding that it was not unfairly prejudicial for the Government to introduce evidence that Grimmond shot Feaster and Kinney.**15** As a result, we hold that the district court acted well within its discretion in admitting the challenged evidence.

IV.

Finally, Grimmond, who is black, argues that the prosecutor's use of a peremptory strike to exclude a black juror from the jury violated Batson v. Kentucky, 476 U.S. 79 (1986). The district court disagreed. "A finding by the [trial] court concerning whether a peremptory challenge was exercised for a racially discriminatory reason is given great deference by this court; we review that finding only for clear error." Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995); see also Hernandez v. New York, 500 U.S. 352, 369 (1991) (plurality opinion) (holding that the findings of the trial court on discriminatory intent in Batson challenge are reviewed for clear error); Dayton Bd. of Educ. v. Brinkman, 443 U.S. 526, 534 (1979) (holding that the finding of intent to discriminate is a factual determination subject to the "clearly erroneous" standard of review).

When making a Batson motion, the defendant must first make a "prima facie" showing of purposeful discrimination. See United States v. Malindez, 962 F.2d 332, 333 (4th Cir. 1992). Once the defendant establishes a prima facie case of discrimination, the burden shifts to

_____

**15** In United States v. Queen , 132 F.3d 991 (4th Cir. 1997), we noted the importance of providing a limiting jury instruction when evidence may be prejudicial. Id. at 997. Here, the district court gave a cautionary instruction. This Court has held that cautionary instructions "generally obviate any such prejudice, `particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt.'" United States v. Powers, 59 F.3d 1460, 1468 (4th Cir. 1995) (quoting United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980)). Without question, there was overwhelming evidence of Grimmond's guilt.

16

the prosecutor to articulate a race-neutral explanation for the challenge. See Batson, 476 U.S. at 97. If the prosecutor satisfies this requirement, the burden shifts back to the defendant to prove that the explanation given is a pretext for discrimination. See Howard v. Moore, 131 F.3d 399, 407 (4th Cir. 1997) (en banc). The ultimate burden always rests with the opponent of the challenge to prove "purposeful discrimination." See Hernandez, 500 U.S. at 360 ("`"Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision-maker . . . selected . . . a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279 (1979) (omissions in original) (internal footnote and citation omitted))); see also Jones, 57 F.3d at 420-21 ("[T]he party challenging the selection process [must] prove[ ] that intentional discrimination was a substantial or motivating factor in the decision to exercise the strike."). The trial court must then determine whether the challenge was exercised for a racially discriminatory reason. The trial court's resolution of this issue rests largely on credibility determinations, and therefore, we give its findings great deference. See Jones, 57 F.3d at 421 ("[T]he [trial] court is especially well-suited to resolve challenges to peremptory strikes of jurors because it has observed with its own eyes the very act in dispute.").

To make out a prima facie case under Batson, Grimmond had to raise at least an inference that the Government used its strikes to exclude potential jurors based on their race. See Batson, 476 U.S. at 96. Grimmond could have done this by showing a pattern of strikes against prospective black jurors or through the Government's questions during voir dire. See id. at 97. Instead, Grimmond simply argues that he is black and so was the prospective juror. It is well established in this Circuit that a prima facie case of discrimination does not arise merely because "a racial minority has been struck from the venire." Malindez, 962 F.2d at 334.

Although the district court found that Grimmond failed to make out a prima facie case of discrimination, "we will not examine whether the defendant has met his burden in establishing a prima facie case where the prosecutor articulates [legitimate] reasons for [the] strikes." United States v. McMillon, 14 F.3d 948, 952 (4th Cir. 1994) (citing

17

United States v. Lane, 866 F.2d 103, 105 (4th Cir. 1989)); United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991). Here, the Government articulated a race-neutral explanation for striking the juror in question. Specifically, the Government stated that "[s]he appeared . . . to be an elderly woman who may not be capable of understanding the complicated issues in a drug . . . conspiracy case." (J.A. at 78.) This Court has held that age is a legitimate race-neutral factor that may be relied upon by a prosecutor for challenging a potential juror. See Howard, 131 F.3d at 408 (citing United States v. Jackson , 983 F.2d 757, 762 (7th Cir. 1993)). Noting that the juror in question was only 65 years old, Grimmond suggests that the Government's reason for its strike is not very persuasive. We find that argument to be without merit. The Government's "explanation need not be `persuasive, or even plausible,' as long as it is neutral." Matthews v. Evatt, 105 F.3d 907, 917 (4th Cir. 1997) (quoting Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995)); see also Jones, 57 F.3d at 420 ("To satisfy this burden, the party need offer only a legitimate reason for exercising the strike, i.e., one that does not deny equal protection; the reason need not be worthy of belief or related to the issues to be tried or to the prospective juror's ability to provide acceptable jury service.").

Because the Government provided a race-neutral explanation for the challenged strike, the burden shifted to Grimmond to prove that the explanation given is a pretext for discrimination. See Batson, 476 U.S. at 98. This, Grimmond has simply failed to do. As a result, we hold that the district court did not err in concluding that the Government's striking of the challenged juror did not violate Batson.

V.

For the foregoing reasons, Grimmond's convictions are affirmed.

AFFIRMED

DIANA GRIBBON MOTZ, concurring in the judgment:

I concur in the judgment.

I agree that we must reject all of Grimmond's appellate arguments. His speedy trial claim is without merit because, even though the 35-

18

month delay was uncommonly long, he has utterly failed to demonstrate any prejudice from the delay and offered no credible explanation for his failure to invoke his speedy trial right until shortly before trial; moreover, the Government's reason for at least a portion of the delay is valid under the rationale of United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). Thus, Grimmond has not shown that, taken together, the four Barker v. Wingo, 407 U.S. 514 (1972), factors weigh in his favor. Grimmond's evidentiary and Batson claims are equally meritless. The disputed evidence does not offend Fed. R. Evid. 404(b) because Grimmond's shooting of Feaster and Kinney established that Grimmond possessed a firearm, an essential element of one of the charged offenses. Grimmond's strongest appellate contention -- that this evidence was cumulative and thus unfairly prejudicial under Fed. R. Evid. 403 in view of the other evidence that he possessed a gun -- is not frivolous; however, Grimmond never presented this argument to the district court. As for the Batson claim, because Grimmond failed to present a prima facie case, it too fails. For these reasons, Grimmond's convictions must be affirmed.

I write separately simply to note that much of the discussion in the majority opinion is dicta. For example, the majority suggests that a defendant cannot claim that he failed to invoke his speedy trial right because he lacked understanding of this right where the defendant had "state-appointed counsel representing him on the charges pending" at the time he "received the detainer informing him of the federal charges." Ante at 8. However, the appointment of counsel in connection with state charges does not per se defeat a defendant's claim that he did not know enough to assert his speedy trial right to federal charges. See, e.g., Coleman v. United States, 442 F.2d 150, 154-55 (D.C. Cir. 1971) (appellate court recognizes that defendant had been represented by counsel and that "continuous representation" thereafter was statutorily mandated, but nonetheless concludes that because the defendant had no "meaningful access to" that counsel, trial court had "no basis for assuming" defendant "had the ability or the information" to waive his speedy trial right by failing to demand it). Certainly, where a defendant can demonstrate that his state counsel did not or could not assist him in invoking his federal speedy trial right, his failure to invoke it should not be weighed against him. Id.; see also Barker, 407 U.S. at 529.

19

Grimmond has forsaken any such demonstration here and thus presented no reason for the district court not to weigh against him the late assertion of his speedy trial right. However, Grimmond's failure to make such a showing does not give an appellate court liberty to make a factual "determinati[on]" that Grimmond "had [state] counsel to advise him of his right to a speedy trial" on federal charges. Ante at 11 n.11. Far from being necessary to the holding of this case, such appellate factual "determinati[ons]" are forbidden. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) ("appellate courts must constantly have in mind that their function is not to decide the factual issues de novo") (internal citation and quotation omitted).

With respect to assessing the degree of prejudice to a defendant resulting from an uncommonly long delay, I disagree with the majority's unnecessary suggestion that "there is simply no way . . . pretrial incarceration can be deemed oppressive" if a defendant is "lawfully incarcerated for reasons not related to the pending charges and makes no credible showing that either his present or potential sentence will be substantially affected by the delay." Ante at 9. The very case upon which the majority relies for this proposition, Smith v. Hooey, 393 U.S. 374 (1969), undermines the majority's suggestion.

In Smith, the Supreme Court recognized that"[a]t first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from undue and oppressive incarceration prior to trial," but concluded that "delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge." Id. at 378 (internal quotations omitted). The Court explained that the existence of an outstanding criminal charge may substantially affect the length or conditions under which a defendant serves his sentence while he awaits trial. Id. The petitioner in Smith, a federal prisoner, made no "showing" at all -- "credible" or otherwise -- that his own "present or potential sentence" would "be substantially affected by the delay" in bringing him to trial in state court. Ante at 9. Nevertheless, the Supreme Court concluded that because "an outstanding untried charge (of which even a convict may, or course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large," it had to reverse a state court's refusal

20

to entertain the petitioner's claim that his state speedy trial rights had been denied. Smith, 393 U.S. at 379 (emphasis added). Thus, nothing in Smith supports the majority's suggestion that a prisoner must make a "credible showing that either his present or potential sentence will be substantially affected by the delay" in order to demonstrate prejudice for speedy trial purposes.

Moreover, this erroneous suggestion is totally unnecessary to our holding. As I noted at the outset, Grimmond neglected to demonstrate any prejudice resulting from the delay. Although, in his appellate brief, Grimmond seems to assume he has established "actual prejudice," Grimmond never argues that his pretrial incarceration was oppressive, and therefore prejudicial. The majority, however, needlessly makes this argument for Grimmond only then to knock down its own argument by determining that Grimmond failed to make a "credible showing" that his sentence was "substantially affected" by the delay. In view of the total deficiency in Grimmond's proof of prejudice, the majority's factual "determin[ation]" as to "whether pretrial incarceration was `oppressive'" is no more "essential" to its holding than it is appropriate for an appellate court. See Anderson, 470 U.S. at 573.

Nor do I see any need for us to opine as to the limits the Supreme Court "intended" for its rationale in United States v. Old Chief, 117 S.Ct. 644 (1997). The majority needlessly proclaims that it believes the Court "intended" Old Chief to "be limited to stipulations involving a defendant's status as a convicted felon" under 18 U.S.C. § 922(g)(1). Ante at 15 n.14. Although the Supreme Court in Old Chief confined its holding to proof of convicted felon status under § 922(g)(1), we do not yet know whether the Old Chief rationale also properly applies to other elements of § 922(g) offenses. 117 S. Ct. at 651 n.7. Of course, we need not reach that question here, because, as the majority itself notes, Grimmond offers no evidence that he ever agreed to stipulate to anything other than his status as a felon, and the government agreed to enter into that stipulation.

21