**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4547**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

ENERVA W. TROTMAN, a/k/a Charles Carlos Clark,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Malcolm J. Howard, Senior District Judge.  (4:91-cr-00092-H-1)

Argued:  September 23, 2010          Decided:  January 4, 2011

Before NIEMEYER and KEENAN, Circuit Judges, and Jerome B. FRIEDMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Niemeyer and Senior Judge Friedman joined.

**ARGUED:** Mitchell G. Styers, BANZET, THOMPSON & STYERS, PLLC, Warrenton, North Carolina, for Appellant.  Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

This appeal in a criminal case presents three issues for our consideration: 1) whether the district court erred in admitting into evidence certain laboratory reports in the absence of testimony from the chemist who prepared the reports; 2) whether the defendant's rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-3175, were violated; and 3) whether the defendant's Sixth Amendment right to a speedy trial was violated.

A jury convicted Enerva Trotman for conspiracy to distribute crack cocaine (count one), in violation of 21 U.S.C. § 846, for distribution of cocaine (counts two, three, four, six, and seven), in violation of 21 U.S.C. § 841(a)(1), and for using or carrying a firearm during and in relation to a drug-trafficking crime (count five), in violation of 18 U.S.C. § 924(c)(1).[1] The district court sentenced Trotman to 420 months' imprisonment.

We hold that the district court erred in admitting into evidence the laboratory reports at issue and, therefore, vacate Trotman's convictions on counts one, six, and seven. We affirm Trotman's convictions on counts two, three, four, and five,

---

[1] In counts five, six, and seven, Trotman also was charged with aiding and abetting the offenses, in violation of 18 U.S.C. § 2.

because the chemist who prepared the reports relevant to those counts testified at the trial. We further hold that Trotman was not tried in violation of his rights under the Speedy Trial Act or in violation of his Sixth Amendment right to a speedy trial. We remand the convictions on all counts for resentencing.

I.

On November 5, 1991, in addition to the conspiracy and firearm charges, Trotman was indicted on five counts of distributing crack cocaine. The dates of those alleged distribution offenses were March 15, March 22, March 29, April 9, and May 3, 1991. Police officers in New Bern, North Carolina, arrested Trotman on these charges on November 6, 1991. In a statement to police officers immediately after his arrest, Trotman stated that in the previous two years, he had obtained from Malcolm Glasgow at least five ounces of cocaine base per week. Trotman agreed to assist the police in apprehending Glasgow, but then escaped from custody.

Trotman was rearrested on February 27, 2006, in New Jersey, and made his initial appearance on the indictment in the district court on March 9, 2006. After Trotman made his initial appearance, the district court granted several motions to continue his arraignment and trial.

In July 2008, Trotman filed a motion to dismiss for violation of his rights under the Speedy Trial Act and the Sixth Amendment. On September 30, 2008, the district court denied Trotman's motion to dismiss for violation of the Speedy Trial Act, without addressing Trotman's Sixth Amendment argument. When Trotman renewed his motion to dismiss, the district court upheld its previous ruling relating to the Act, and concluded that Trotman's Sixth Amendment right to a speedy trial had not been not violated.

Jury selection for Trotman's trial began on January 26, 2009. At trial, Officer Donald Hines testified about each of his undercover transactions with Trotman. When describing the April 9, 1991 and May 3, 1991 transactions referenced in counts six and seven of the indictment, Officer Hines testified that he told Trotman that Hines wanted to purchase crack cocaine, and that Trotman replied that he would get the crack cocaine from Glasgow. Hines also stated that crack cocaine has "a semi-solid, rock-like form," and that, based on his experience and training, he concluded that the substances he purchased from Trotman on those two days appeared to be crack cocaine. Hines identified two exhibits offered by the government as containing the items he purchased from Trotman on April 9, 1991 and May 3, 1991, respectively. The district court admitted these two exhibits into evidence.

Two chemists testified at trial. The first chemist, Neil Evans, testified that he performed chemical analyses on the substances that were purchased by Officer Hines in March 1991. Evans confirmed that the substances were crack cocaine, and authenticated the laboratory reports received into evidence reflecting these results.

A second chemist, Manuel Febo, testified regarding the laboratory reports involving substances purchased from Trotman on April 9, 1991 and May 3, 1991. Febo acknowledged that he did not perform the tests or prepare the laboratory reports related to the substances purchased from Trotman on those dates. Nevertheless, over Trotman's objection, Febo was permitted to testify that based on his review of those laboratory reports and notes completed by a different chemist, and Febo's own observation of the substances at issue, the substances obtained from Trotman on those dates were crack cocaine weighing 26.8 grams and 21.1 grams. Trotman also objected to the admission of the laboratory reports, but the district court overruled the objection and admitted those reports into evidence.

The jury convicted Trotman on all counts. Using a special verdict form, the jury found that the drug conspiracy involved "[a]t least 50 grams" of cocaine base. With regard to counts six and seven, the jury found that Trotman distributed "[a]t

least 5 grams" of cocaine base.   Trotman appeals from the district court's judgment.

## II.

### A.

We first consider whether the district court erred in admitting into evidence the laboratory analysis reports for the substances seized on April 9, 1991 and May 3, 1991, in the absence of testimony by the chemist who prepared those reports. In addressing this alleged Confrontation Clause violation, we apply a de novo standard of review.  United States v. Abu Ali, 528 F.3d 210, 253 (4th Cir. 2008).

The Confrontation Clause of the Sixth Amendment provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. Const. amend. VI.   In Crawford v. Washington, 541 U.S. 36, 59 (2004), the Supreme Court held that the Confrontation Clause bars the admission of "testimonial" statements if the declarant does not testify at trial, unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant.  Although the Court in Crawford declined to set out a comprehensive definition of the term "testimonial," the Court indicated that some statements always would be categorized as "testimonial," including

7

"statements that declarants would reasonably expect to be used prosecutorially." Id. at 51.

In Melendez-Diaz v. Massachusetts, ___ U.S. ___, 129 S. Ct. 2527, 2532 (2009), the Supreme Court applied its holding in Crawford to preclude the admission into evidence of "certificates of analysis" prepared by laboratory scientists describing the results of forensic tests performed on certain seized substances. The certificates at issue reported the composition, quality, and net weight of the substances analyzed. Id. The Court held that these certificates, which the Court described as "quite plainly affidavits," were "testimonial" because they were made under oath and under circumstances that would lead an objective witness to conclude that they would be used at a later trial. Id.

In the present case, the challenged laboratory reports likewise were "testimonial" because they were prepared under circumstances that would lead an objective witness reasonably to conclude that the reports would be used against Trotman at trial. We reach this conclusion because the laboratory reports were conducted to test the weight and composition of the substances seized from Trotman on April 9, 1991 and May 3, 1991. Thus, given the government's failure to show that the preparing chemist was unavailable and that Trotman had a prior opportunity to cross-examine the chemist, the admission of the laboratory

8

analysis reports violated Trotman's Sixth Amendment right of confrontation. See Melendez-Diaz, ___ U.S. at ___, 129 S. Ct. at 2532.

Because the district court erred in admitting the laboratory reports purporting to analyze the substances seized from Trotman on April 9, 1991 and May 3, 1991, we next consider the issue whether that error was harmless. See Abu Ali, 528 F.3d at 255-56 (citing Fed. R. Crim. P. 52(a)). A constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). The government bears the burden of proving that the admission of these laboratory reports did not contribute to Trotman's convictions on the April 9, 1991 and May 3, 1991 charges. See Abu Ali, 528 F.3d at 256.

In conducting our harmless error analysis, we exclude the two laboratory reports at issue from our consideration, and review the remaining evidence to determine whether the government has met its burden under Chapman. The government contends that this remaining evidence established that the substances Trotman sold on April 9, 1991 and May 3, 1991 were crack cocaine. We disagree with the government's argument.

The remaining evidence showed that Trotman had bought and sold crack cocaine in the past, that the substances he sold on

9

April 9, 1991 and May 3, 1991 looked like crack cocaine, and that he had agreed to procure crack cocaine for Officer Hines to purchase on those two occasions. Notably missing from the government's evidence, however, is any proof that the substances sold on those two occasions actually were crack cocaine. While some of the government's evidence was probative of the issue whether the drugs were crack cocaine, that evidence was insufficient to find "beyond a reasonable doubt that the error [in admitting the laboratory reports] did not contribute to the verdict obtained."[2]  Chapman, 386 U.S. at 24. We therefore vacate Trotman's convictions on counts one, six, and seven.[3]

B.

We next decide whether the district court erred in denying Trotman's motion to dismiss based on an alleged violation of the Speedy Trial Act (the Act). Trotman asserts that the district

---

[2] The government argues that defense counsel admitted during trial that there was no dispute regarding the identity of the substances sold to Officer Hines. However, defense counsel never stipulated or conceded that the type of substances sold was crack cocaine. Instead, defense counsel merely identified testimony already in the record bearing on the issue whether the substances sold were crack cocaine.

[3] The government also relied on the laboratory reports to establish the quantity of drugs Trotman sold on April 9, 1999 and May 3, 1999. Because we held that admission of the laboratory reports was not harmless error, we need not address whether admission of the laboratory reports contributed to the jury's findings concerning the drug quantities.

10

court improperly extended his trial date beyond the seventy-day limitation imposed by the Act without making the required "ends-of-justice" findings. Trotman also argues that the district court improperly excluded from its speedy trial calculation a continuance for a period of time that the government requested to locate witnesses, in violation of 18 U.S.C. § 3161(h)(7)(C).

In considering these arguments, we review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Kellam, 568 F.3d 125, 132 (4th Cir. 2009). The Act requires that a criminal trial begin within seventy days of the filing of an information or indictment, or of the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). To provide courts some flexibility in scheduling trials, the Act provides that certain delays may be excluded from the seventy-day limitation. As relevant here, § 3161(h)(7)(A) of the Act excludes from the seventy-day limitation delays in which a court finds "that the ends of justice served by granting [a] continuance outweigh the public's and defendant's interests in a speedy trial." Zedner v. United States, 547 U.S. 489, 498-99 (2006).

The Act lists several factors that a judge must consider when conducting the "ends-of-justice" assessment required by § 3161(h)(7)(A). These factors include consideration whether a defendant needs reasonable time to obtain counsel, whether

11

counsel needs additional time for effective preparation of the case, and whether delay is necessary to ensure continuity of counsel. 18 U.S.C. § 3161(h)(7)(B)(iv). The Act specifies that a continuance will not be granted because of a "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." Id. § 3161(h)(7)(C).

For a delay to be excludable under § 3161(h)(7)(A) from the seventy-day limitation, a district court must explain, "either orally or in writing, its reasons for finding" that the ends of justice served by granting the continuance outweigh the interests of the public and the defendant. Id. § 3161(h)(7)(A). A district court is required to state its findings on the record by the time it rules on a defendant's motion to dismiss. Zedner, 547 U.S. at 506-07 (citing § 3162(a)). It also must be "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." United States v. Henry, 538 F.3d 300, 304 (4th Cir. 2008). If a district court fails to state its findings on the record, then the delay is not excludable under the Act. Zedner, 547 U.S. at 507.

Here, the government concedes that fifty days of non-excludable time elapsed between March 15, 2006 and May 3, 2006. Further, neither party challenges the excludable time associated with the various pretrial motions, including the government's

12

motion for detention and the defendant's motions to dismiss and motion in limine.  See 18 U.S.C. § 3161(h)(1)(D).

We conclude that the remaining days at issue are excludable under § 3161(h)(7)(A) as continuances satisfying the "ends-of-justice" assessment.  In a September 30, 2008 order, the district court addressed eight of Trotman's continuance motions and stated "ends-of-justice findings" relating to its decision to grant each of the eight motions.  (J.A. 170-74).  The district court explained that Trotman successively had dismissed five attorneys, and that these continuance motions were granted to allow Trotman "time to change counsel."  The district court noted that it also granted one of these continuance requests because of family health concerns expressed by Trotman.

In the same order, the district court made "ends-of-justice" findings relating to three continuance motions made by the government in January 2007.  The district court granted the government's first two motions, requested on January 4, 2007 and January 8, 2007, in light of Trotman's abrupt withdrawal of his tentative plea agreement, the age of the events in the case, and the time required to locate and prepare the necessary witnesses.[4]

---

[4] The district court also entertained the government's motion for a continuance at a hearing on January 3, 2007.  We need not address this motion, however, because the one-day interval involved does not affect our speedy trial analysis.

We find no merit in Trotman's argument that the delay associated with the government's continuance motions of January 4, 2007, and of January 8, 2007, is not excludable under § 3161(h)(7)(C), because the district court's reasons included the government's need to locate and prepare certain witnesses for trial. Under that section, a delay is not excludable for "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C). Although the district court, in part, granted these two continuance motions because of the government's problems locating certain witnesses, the district court gave two other independent reasons for granting these continuances, namely, Trotman's abrupt withdrawal from his tentative plea agreement and the age of the events in question. Even assuming that the government's inability to locate available witnesses was not a sufficient reason by itself, the other reasons cited by the district court independently supported the court's decision granting these two continuance requests.

In the September 30, 2008 order, the district court also addressed its decision to grant the government's continuance request of January 17, 2007. The district court stated that it granted this continuance request because of specific conflicts that would have rendered unavailable key witnesses for the prosecution. Contrary to Trotman's argument, this reason did

14

not fall within the prohibition of 18 U.S.C. § 3161(h)(7)(C), because the unavailability of an identified witness during a given time period is a reason completely different from the government's failure to obtain an available witness to prosecute the case.

Although the district court's order of September 30, 2008 failed to address the government's motions to continue filed on June 2, 2008 and December 8, 2008, the delay resulting from the granting of these two motions to continue also was excludable under the Act. The period of delay associated with granting the government's continuance motion of June 2, 2008 fully overlaps the period of delay that we already have excluded based on Trotman's eighth continuance. The district court granted Trotman's eighth continuance motion on March 13, 2008, and continued the case until the court's July 2008 term. Based on our conclusion that the delay in time between March 13, 2008 and July 2008 was excluded under the Act, we need not address whether the district court made the appropriate "ends-of-justice" findings when ruling on the June 2, 2008 motion.

In its December 8, 2008 motion, the government stated that counsel both for the government and for the defendant were scheduled to be on vacation during the week of December 29, 2008. Additionally, many of the government's witnesses were scheduled to be on vacation during that time. When the district

15

court ruled on the motion, it found "[u]pon the unopposed motion of the Government and for good cause shown," the trial should be continued. The district court specifically excluded this period of delay from the Act. Although the district court order could have provided more precise reasons, the order fully incorporated the reasons stated by counsel in the government's motion. Thus, we do not find a violation of the Speedy Trial Act in the district court's decision to grant this continuance request. We therefore affirm the district court's dismissal of Trotman's motion to dismiss alleging violations of the Act.

C.

Finally, Trotman argues that his Sixth Amendment right to a speedy trial was violated. We review the district court's legal conclusions on this issue de novo and its factual findings for clear error. United States v. Woolfolk, 399 F.3d 590, 594, 597-98 (4th Cir. 2005).

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To establish a violation of this Sixth Amendment guarantee, a defendant must first show that the Amendment's protections have been triggered by "arrest, indictment, or other official accusation." Doggett v. United States, 505 U.S. 647, 655 (1992). Next, a defendant must show that the four factors identified in Barker v. Wingo, 407 U.S.

16

514 (1972), when balanced, weigh in his favor. United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). These factors are (1) the length of the delay in bringing the defendant to trial; (2) the reason for the delay, (3) the defendant's timely assertion of his right to a speedy trial, and (4) the extent of resulting prejudice to the defendant. Barker, 407 U.S. at 530; United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998).

The first Barker factor acts as a gate-keeping requirement. Grimmond, 137 F.3d at 827. If the delay in bringing a defendant to trial is not "presumptively prejudicial," then the Sixth Amendment inquiry ends. Id. at 827-28. Courts often have concluded that a delay over one year is "presumptively prejudicial." See, e.g., Doggett, 505 U.S. at 652 n.1; Woolfolk, 399 F.3d at 597; Grimmond, 137 F.3d at 828.

In the present case, Trotman's Sixth Amendment right to a speedy trial attached when he was charged in the indictment on November 5, 1991. See Jones v. Angelone, 94 F.3d 900, 906 n.6 (4th Cir. 1996). The seventeen-year delay between the date of the indictment and the date of Trotman's trial is sufficient to trigger the Sixth Amendment inquiry. See Doggett, 505 U.S. at 652.

Next, we consider the reasons for the seventeen-year delay. The record shows that after agreeing to cooperate with the police, Trotman fled and remained a fugitive from 1991 until

17

2006. Once he ultimately was rearrested, he caused additional delays by seeking new counsel five times and by filing eight continuance motions. Because Trotman has been responsible for most of the seventeen-year delay in his case, the second Barker factor weighs in favor of the government.

The third Barker factor also weighs in favor of the government. Trotman waited until sixteen years after he was indicted, with only six months remaining before his trial, to assert his Sixth Amendment right. See Grimmond, 137 F.3d at 829.

Lastly, Trotman has not identified any true prejudice that he suffered as a result of the delay in bringing his case to trial. Trotman claims that he was prejudiced because he was housed in a jail location that precluded him from regular contact with his attorney, and because the government had time to secure additional witnesses during the delay. However, neither of these assertions is relevant to the prejudice inquiry mandated by Barker.

This prejudice inquiry focuses on "the interests [that] . . . the speedy trial right was designed to protect." Grimmond, 137 F.3d at 829. These interests include: "(1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." Id.

18

Trotman was incarcerated for several months after his initial appearance, in part because he already had escaped from federal custody. He has not established that his defense was impaired by the delay due to any limitation in his ability to consult with his counsel, to the unavailability of any witnesses, to any lack of recall by witnesses, or to any evidence lost. Therefore, the prejudice factor in Barker does not weigh in Trotman's favor. Because the four Barker factors do not weigh in Trotman's favor, we hold that his Sixth Amendment right to a speedy trial was not violated, and that the district court did not err in denying his motion to dismiss on this basis.

## III.

For these reasons, we vacate Trotman's convictions on counts one, six, and seven, affirm Trotman's convictions on counts two, three, four, and five, and remand the case for resentencing.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

19