**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                                          No. 98-4246

EARL FRITH, a/k/a F. Earl Frith,
<u>Defendant-Appellee.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                            No. 98-4591
JULIO ROBERTO CASTELLANOS, a/k/a
J.R.,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.
                                                                            No. 98-4653
JULIO ROBERTO CASTELLANOS, a/k/a
J.R.,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-91-82-R)

Argued: May 6, 1999

Decided: June 14, 1999

Before WIDENER, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Ernest Booth, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellant. David Dennis Walker, DAVID C. WALKER, P.C., Salem, Virginia; Joaquin N. Fernandez, Coconut Grove, Florida, for Appellees. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Joseph W. H. Mott, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States appeals an order of the district court dismissing the indictment against Earl Frith on the basis that a seven-year delay between indictment and trial violated Frith's Sixth Amendment right to a speedy trial. Additionally, the Government appeals the sentence imposed on Frith's codefendant, Julio Roberto Castellanos, arguing that the district court erred in awarding Castellanos a downward adjustment for acceptance of responsibility. See U.S. Sentencing Guidelines Manual § 3E1.1 (1997). Castellanos cross appeals, raising several challenges to his convictions and sentence. For the reasons that follow, we reverse the dismissal of the indictment against Frith.

2

And, although we affirm Castellanos' convictions, we vacate his sentence and remand for resentencing.

I.

The facts, viewed in the light most favorable to the Government, are as follows. Beginning in the fall of 1988, Leonardo Rivera-Ruiz began importing and selling cocaine for the Cali Cartel, a narcotics syndicate based in Colombia, South America. The drugs were transported to the United States in large quantities, and Rivera-Ruiz sold them in New York and Philadelphia. Approximately a year later, Rivera-Ruiz decided to retire from the drug trade and disbanded his distribution operations. Shortly thereafter, a member of the Cartel persuaded him to sell additional cocaine. Lacking an outlet for the drugs, Rivera-Ruiz contacted Castellanos, who agreed to sell the narcotics in Houston. Attempts to deliver the proceeds of the sale of the cocaine to the Cartel were foiled by federal agents, who seized large sums of money from couriers. In order to satisfy the resulting debt to the Cartel, Rivera-Ruiz returned to the business of selling cocaine with Castellanos as a partner. At that point--in the fall of 1990--Rivera-Ruiz employed Javier Cruz to transport cocaine from Phoenix and Los Angeles to New York for sale.

At approximately the same time as he began working for Rivera-Ruiz, Cruz moved to Salem, Virginia and opened a used automobile dealership. He contacted Frith, a local real estate agent, about purchasing a dairy farm. In addition to purchasing the property, Cruz bought 30 head of cattle, on which he made a cash deposit of $16,000 in drug proceeds. Frith structured the deposit of the money in order to avoid federal reporting requirements, dividing it into two deposits of $8,000 and making each at a different branch of his bank.

On May 12, 1991, a sealed indictment was returned naming, inter alia, Rivera-Ruiz, Cruz, and Frith. Frith was not aware of the indictment, but Cruz, who had been arrested in April 1991, immediately began cooperating with authorities. In August 1992, the Drug Enforcement Administration sent Cruz to Colombia in an undercover capacity, where he remained until February 1996. After further investigation, the Government obtained a superseding sealed indictment in January 1997, which was unsealed as to Frith the following month.

3

The superseding indictment named 28 defendants, including Castellanos and Frith, both of whom were charged with conspiracy to possess with the intent to distribute cocaine, see 21 U.S.C.A. § 846 (West Supp. 1999), and conspiracy to import cocaine, see 21 U.S.C.A. § 963 (West Supp. 1999). Additionally, Frith was charged with structuring a currency transaction with a domestic financial institution to evade a reporting requirement, see 31 U.S.C. § 5324(3) (1988), and money laundering, see 18 U.S.C. § 1956(a)(3)(B), (C) (1988 & Supp. III 1992). Trial commenced in January 1998. Castellanos was convicted of both conspiracy counts. Frith was acquitted of the conspiracy charges but was convicted of structuring; the jury was unable to reach a verdict as to the charge of money laundering.

A few days before trial, Frith moved to dismiss the indictment on the basis that the delay following the initial indictment violated his Sixth Amendment speedy trial right. The district court took this motion under advisement and after trial dismissed the indictment. In making this ruling, the court noted that the delay in prosecution was not due to the Government's negligence but rather was a product of its diligent efforts to investigate other members of the conspiracy. Additionally, the court found that any actual prejudice to Frith was minimal at best. Nevertheless, the court concluded that it was required to presume prejudice after such a lengthy delay and dismissed the indictment against Frith.

At sentencing, the district court granted Castellanos a two-level downward adjustment for acceptance of responsibility, see U.S.S.G. § 3E1.1, over the Government's objection. The court noted that Castellanos had appeared for trial even though he faced a potential life sentence and was a significant flight risk. The court also stated that it would "never ... punish anyone for taking a trial" and observed that Castellanos, who did not testify at trial, "didn't get on the stand and lie or ... [say he] didn't do it." J.A. 1030. It declined, however, to grant Castellanos a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(6).

II.

We first consider the Government's contention that the district court erred in dismissing the indictment against Frith on the basis that

4

the delay of almost seven years between the initial indictment and trial violated his Sixth Amendment right to a speedy trial. See U.S. Const. amend. VI (guaranteeing an accused "the right to a speedy ... trial"). The question of whether Frith's constitutional right was violated is a legal one subject to de novo review, although we review the factual findings of the district court for clear error. See United States v. Brown, 169 F.3d 344, 348 (6th Cir. 1999); see also Doggett v. United States, 505 U.S. 647, 651-58 (1992) (conducting de novo review of Sixth Amendment speedy trial claim); United States v. Grimmond, 137 F.3d 823, 827-31 (4th Cir.) (same), cert. denied, 119 S. Ct. 124 (1998).

In determining whether a Sixth Amendment speedy trial violation has occurred, a court must balance four considerations: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972); see Doggett, 505 U.S. at 651. The length-of-delay factor serves two functions in the speedy trial inquiry. First, it operates as a preliminary requirement: It is unnecessary to conduct an analysis of a speedy trial claim unless the defendant first demonstrates "that the interval between accusation and trial has crossed the threshold dividing ordinary from `presumptively prejudicial' delay." Doggett, 505 U.S. at 651-52 (quoting Barker, 407 U.S. at 530). Once this hurdle is overcome, the length of delay is relevant to the remainder of the speedy trial analysis because "the presumption that pretrial delay has prejudiced the accused intensifies over time." Id. at 652.

There is no question that the delay in this case is sufficiently long to require further inquiry into whether Frith's Sixth Amendment speedy trial right was violated. See id. (concluding that an "extraordinary 8 1/2-year lag between ... indictment and arrest clearly suffices to trigger the speedy trial enquiry"); id. at 652 n.1 (noting that "the lower courts have generally found postaccusation delay `presumptively prejudicial' at least as it approaches one year"); Grimmond, 137 F.3d at 828 (determining that a delay of 35 months satisfied the threshold requirement). Accordingly, we must proceed to an analysis of all of the relevant considerations.

We begin by addressing the reason for the delay. As the Supreme Court has noted, various reasons for a lag between indictment and

5

trial are accorded different weights in the speedy trial analysis. See Barker, 407 U.S. at 531. For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Id. More neutral reasons, such as governmental negligence or an overcrowded court docket, are still weighed against the Government (because it bears the ultimate responsibility for bringing a defendant to trial), but less heavily. See id. Finally, valid reasons, such as the need to obtain a missing witness, are weighed in favor of the Government. See id.

Here, the district court found that the Government delayed prosecuting Frith so that it could continue to investigate the wide-ranging conspiracy in which Frith was tangentially involved, a purpose the court termed "noble." J.A. 936. Prosecuting Frith shortly after the return of the original indictment could have jeopardized the ongoing investigation of the Cali Cartel, which involved some of the defendants named in the indictment. Moreover, Frith does not contend that the Government was dilatory in its investigation of the Cartel or in its pursuit of a superseding indictment once the investigation was concluded. Accordingly, we determine that the reason for the delay should be weighed in favor of the Government.

We next consider whether Frith asserted his right to a speedy trial in a timely fashion. "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. Of course, a defendant who is unaware that he is under indictment cannot be held to account for failing to assert his right to a speedy trial. See Doggett, 505 U.S. at 653-54.

The Government does not dispute that Frith was unaware that he had been indicted in 1991. And, he did not learn that he had been charged until after the superseding indictment was unsealed in late February 1997. Under Doggett, Frith is not responsible for failing to assert his speedy trial right during the six years that passed before he became aware that he had been indicted. However, we cannot ignore the fact that Frith waited nearly a year after the unsealing of the superseding indictment to assert his right to a speedy trial. Under the circumstances, we are inclined to give this factor little weight in our analysis.

6

Lastly, we must consider the prejudice suffered by Frith. The district court found this factor dispositive, reasoning that the seven-year delay between indictment and trial mandated an irrebuttable presumption that Frith had been prejudiced in his ability to defend against the charges.**1** The court based its ruling on <u>Doggett</u>, in which the Supreme Court held that a delay of eight and one-half years between indictment and trial violated the Sixth Amendment despite the defendant's inability to establish actual prejudice. <u>See id.</u> at 654-58.

We conclude that the district court misunderstood the holding and rationale of <u>Doggett</u>. Although the court was correct that a showing of actual prejudice is not required in all speedy trial cases, <u>see id.</u> at 655 (stating that "affirmative proof of particularized prejudice is not essential to every speedy trial claim" because "impairment of one's defense is the most difficult form of speedy trial prejudice to prove"), <u>Doggett</u> specifically noted that "presumptive prejudice cannot alone carry a Sixth Amendment claim," but rather must be considered in the context of the other factors, particularly the reason for the delay, <u>id.</u> at 656. When delay is justified by a legitimate governmental purpose, such as the need to obtain a missing witness, a speedy trial claim will fail absent a demonstration of actual prejudice. <u>See id.</u> In contrast, a lengthy bad faith delay by the Government may "present an overwhelming case for dismissal" even without a showing of actual prejudice. <u>See id.</u> In <u>Doggett</u>, the Court concluded that a delay of eight and one-half years caused by the Government's negligence in locating the defendant mandated dismissal "when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted." <u>Id.</u> at 658 (footnote & citation omitted). Thus, <u>Doggett</u> did not hold, as the district court apparently believed, that a sufficiently lengthy delay may be dispositive of a speedy trial claim irrespective of the other criteria for evaluating such a claim.

_____

**1** The Supreme Court has identified three relevant forms of prejudice in speedy trial cases: "`oppressive pretrial incarceration,' `anxiety and concern of the accused,' and `the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." <u>Doggett</u>, 505 U.S. at 654 (quoting <u>Barker</u>, 407 U.S. at 532) (alteration in original). The parties agree that since Frith was not incarcerated prior to trial and was unaware of the indictment for the majority of its pendency, only the third form of prejudice is relevant here. <u>See id.</u>

Considering the prejudice factor in light of the reason for the delay as Doggett instructs, we conclude that the district court erred in weighing this factor in favor of Frith. Here, unlike in Doggett, the delay in bringing Frith to trial was justifiable. Thus, his speedy trial claim can succeed only if he makes a showing of actual prejudice. See id. at 656. And, the district court found that the prejudice to Frith resulting from the delay was minimal at best; indeed, the court specifically discredited Frith's trial testimony that he had forgotten the details of the transaction that was the subject of the structuring charge.

In sum, our consideration of the factors relevant to an analysis of a speedy trial claim leads us to conclude that Frith's Sixth Amendment right was not violated by the seven-year delay between indictment and trial. Accordingly, we reverse the dismissal of the indictment against Frith.

III.

The Government next contends that the district court erred in awarding Castellanos a reduction in his offense level for acceptance of responsibility. See U.S.S.G. § 3E1.1. The determination by the district court concerning whether a defendant has accepted responsibility "'is entitled to great deference on review'" and will be overturned only if we conclude that the court committed clear error. United States v. Dickerson, 114 F.3d 464, 469 (4th Cir. 1997) (quoting U.S.S.G. § 3E1.1, comment. (n.5)).

We have little difficulty in concluding that the district court clearly erred in finding that Castellanos accepted responsibility for his offense. The district court offered three reasons for awarding the reduction: that Castellanos, who faced a potential life sentence, had voluntarily appeared for trial in spite of being a significant flight risk; that the court would "never ... punish anyone for taking a trial"; and that Castellanos "didn't get on the stand and lie or ... [say he] didn't do it." J.A. 1030. None of these justifications provides any support for the factual conclusion that Castellanos accepted responsibility.

The commentary to § 3E1.1 makes clear that the adjustment generally is not available to those, like Castellanos, who contest factual

8

guilt at trial. See U.S.S.G. § 3E1.1, comment. (n.2).**2** Furthermore, merely appearing for trial is a far cry from the affirmative acceptance of personal responsibility that is a prerequisite to an adjustment for acceptance of responsibility. See United States v. Nale, 101 F.3d 1000, 1005 (4th Cir. 1996) (explaining that "in order to receive a reduction under § 3E1.1 ... the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct"); see also U.S.S.G. § 3E1.1(a) (stating that a defendant must "clearly demonstrate[ ] acceptance of responsibility for his offense" in order to receive a two-level reduction). Also, the denial of an adjustment for acceptance of responsibility does not constitute punishment for exercising the right to a trial. See United States v. Guadagno, 970 F.2d 214, 225-26 (7th Cir. 1992). Finally, the mere fact that a defendant does not testify--and thus does not testify falsely--at a trial during which he contests his factual guilt does not amount to an acceptance of responsibility. See United States v. Ivy, 83 F.3d 1266, 1293-94 (10th Cir. 1996); see also United States v. Castner, 50 F.3d 1267, 1279 (4th Cir. 1995) (observing that "[a] defendant ... is not entitled to a reduction for acceptance of responsibility merely because he did not obstruct the administration of justice during his trial").**3** Accord-

_____

**2** The guideline commentary does provide that "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial," as when "a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Id. This narrow exception does not apply here.

**3** The district court also noted that Castellanos acknowledged his guilt after the trial. However, post-trial remorse does not generally support a reduction for acceptance of responsibility. See United States v. Martinez, 901 F.2d 374, 377-78 (4th Cir. 1990) (affirming denial of adjustment for acceptance of responsibility when defendant did not acknowledge his guilt until four days before sentencing). Moreover, we note that Castellanos' purported acceptance of responsibility consisted of a written statement that simply recited, almost verbatim, the portion of the presentence report that recounted the offense conduct; another statement in which Castellanos claimed to "fully accept responsibility for [his] conduct," J.A. 1100; and testimony at the sentencing hearing. In both statements and in his testimony, Castellanos consistently attempted to minimize the extent of his participation in the conspiracy.

9

ingly, we conclude that the district court committed clear error in reducing Castellanos' offense level for acceptance of responsibility.

IV.

On cross appeal, Castellanos contends that the district court erred in refusing to impose a two-level downward adjustment pursuant to U.S.S.G. § 2D1.1(b)(6). The Government concedes, and we agree, that the district court erroneously refused to consider whether this adjustment was appropriate.

Section 2D1.1(b)(6) directs a district court to apply a two-level downward adjustment when "the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level ... is level 26 or greater." The district court refused to grant this adjustment to Castellanos on the basis that the reduction was not available because the guideline range exceeded the statutory mandatory minimum. In so ruling, the court appears to have confused § 2D1.1(b)(6) with U.S.S.G. § 5C1.2, which requires the court to "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence[ ] if" certain criteria are met. The latter provision applies only when the applicable statutory mandatory minimum exceeds the defendant's guideline range. Section 2D1.1(b)(6), on the other hand, applies whenever a defendant meets the criteria enumerated in § 5C1.2 and his offense level is greater than 25. See United States v. Leonard , 157 F.3d 343, 345-46 (5th Cir. 1998) (per curiam). We therefore reverse the ruling of the district court and remand for it to make findings regarding whether Castellanos satisfied the requirements of § 5C1.2.**4**

_____

**4** Castellanos raises several other issues, all of which we have carefully considered and have determined to be without merit. Of these, only his contention that the district court erred in refusing a request of the jury to review the 1991 indictment, which had been admitted into evidence during trial, warrants any discussion. "The transmittal of exhibits to the jury is ordinarily a matter within the discretion of the trial court and will not be reversed in the absence of clear prejudice to the defendant[ ]." United States v. De Hernandez, 745 F.2d 1305, 1308 (10th Cir. 1984). Castellanos has not specified any possible harm that may have resulted from the failure of the district to transmit the 1991 indictment to the jury, and our review of the record reveals none. Accordingly, we reject this argument.

V.

Because we conclude that the district court erred in conclusively presuming prejudice to Frith as a result of the seven-year delay between indictment and trial, we reverse the dismissal of the indictment as to Frith. We affirm Castellanos' convictions, but reverse the award of a downward adjustment for acceptance of responsibility. We further hold that the district court erred in refusing to consider whether Castellanos was entitled to a two-level reduction under § 2D1.1(b)(6).

Accordingly, we reverse as to Frith. As to Castellanos, we affirm in part, reverse in part, and remand for resentencing.

<u>AFFIRMED IN PART, REVERSED IN PART, AND REMANDED</u>

11