2013 UT 71

STATE of Utah, Plaintiff and Appellee,

v.

Donald E. YOUNGE Jr., Defendant and Appellant.

No. 20100146.

Supreme Court of Utah.

Nov. 22, 2013.

John E. Swallow, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, for appellee.

Lori J. Seppi, Karen Stam, Michael D. Misner, Andrea J. Garland, Salt Lake City, for appellant.

## INTRODUCTION

Associate Chief Justice NEHRING, opinion of the Court:

¶ 1 Donald E. Younge Jr. contends that the State did not commence its prosecution of him within the statute of limitations. He also claims that his right to a speedy trial was violated. We hold that the State commenced Mr. Younge's prosecution within the applicable statute of limitations and that his right to a speedy trial was not violated and accordingly affirm his convictions.

## BACKGROUND

¶ 2 On the evening of November 7, 1996, twenty-three-year-old R.C. was walking home from the University of Utah when she was brutally attacked and sexually assaulted in an alley. A Code-R rape examination was later conducted, and R.C. provided a statement to a Salt Lake City police officer about the attack. R.C. did not know the identity of her attacker but was able to give a vague physical description. A DNA profile of the attacker was created from the evidence collected during the Code–R rape examination and added to the Combined DNA Index Sys-

tem (CODIS). No match was immediately found and police were unable to locate any suspects based solely on the description.

¶ 3 With the statute of limitations approaching four years later [1] and without further leads as to the attacker's identity, the State filed an information in March 2000 charging "John Doe, an unknown male" with the crime and identifying the unknown assailant by DNA profile. The information charged two counts of aggravated sexual assault and one count of robbery.

¶ 4 Two years later, a match for the DNA profile of the unknown assailant was identified in CODIS. The profile matched Donald E. Younge Jr., who was then being held in an Illinois county jail on charges stemming from the serial murder of three women and the attempted murder of a fourth woman. In August 2002, two Salt Lake City police officers traveled to the jail in Illinois where Mr. Younge was being held. The officers obtained a blood sample from Mr. Younge pursuant to an Illinois search warrant and delivered it to the Utah State Crime Lab the next day. The DNA profile obtained from the blood sample matched the DNA profile of the "John Doe" named in the information filed in R.C.'s case in March 2000.

¶ 5 In September 2002, the State filed an amended information identifying Donald E. Younge Jr. by name, and an arrest warrant was issued the same day. Mr. Younge remained in the St. Clair, Illinois county jail awaiting his trial for the Illinois murder charges. A copy of the amended information and the warrant was mailed to the jail the following day. In February 2009, Mr. Younge's pending charges in Illinois were dismissed, and Utah expeditiously requested his extradition. Mr. Younge was extradited on February 28, 2009, and booked into the Salt Lake County Jail on March 2, 2009. He

appeared in court the next day and was advised of the charges against him from the 1996 attack.[2]

¶ 6 On July 9, 2009, Mr. Younge was bound over for trial on all counts. He was arraigned on August 28. At the hearing, he asserted his right to a speedy trial and informed the court that he intended to file two motions: a motion to quash the bindover and a motion to dismiss on statute of limitations grounds. Mr. Younge filed the motion to quash that same day and filed the motion to dismiss two weeks later on September 11. The district court set a briefing schedule for the motions and scheduled a hearing for October 23, granting the State an extra week to respond due to a week-long trial that the prosecutor was involved in and passing over an October 16 hearing date because the prosecutor had a scheduling conflict. The district court denied defense counsel's initial request that the trial commence on October 26 because the prosecutor was not available that day. Defense counsel requested another trial date of November 9 and 10, and a final pretrial conference on November 6. The court granted that request.

¶ 7 On October 23, 2009, the district court addressed four motions filed by Mr. Younge: (1) the motion to quash the bindover, filed August 28; (2) the motion to dismiss on statute of limitations grounds, filed September 11; (3) a motion to suppress the DNA evidence from the blood draw taken of Mr. Younge in Illinois, filed October 1; and (4) a motion to exclude the State's proposed expert witnesses, filed October 21. The district court denied Mr. Younge's motion to quash the bindover. After hearing evidence, the district court also denied his motion to suppress the DNA evidence and the motion to exclude the State's expert witnesses. The

---

**1.** At the time of the offense, Utah Code section 76–1–302 (1990) required that the prosecution for most felonies "be commenced within four years after [the offense] is committed." Only "prosecution for a capital felony, aggravated murder, murder, or manslaughter" could "be commenced at any time." UTAH CODE § 76–1–301 (1995). In 2008, aggravated sexual assault was added as a felony for which prosecution "may be commenced at any time." 2008 Utah Laws 1143.

**2.** Mr. Younge was also informed of a second Utah case in which he was charged with aggravated murder, two counts of attempted aggravated murder, and seven other felony offenses alleged to have occurred in August 1999. Those charges were dismissed without prejudice on November 5, 2012. *State v. Younge*, No. 081903943 (Utah 3d Dist.Ct. Nov. 5, 2012).

district court heard evidence related to Mr. Younge's statute of limitations challenge and ultimately continued that hearing. After hearing additional evidence, the district court ruled on October 27 that the limitation period had been tolled from March 1999 until Mr. Younge's extradition at the end of February 2009 due to Mr. Younge's absence from Utah and consequently denied Mr. Younge's statute of limitations challenge.

¶ 8 That same day, the State informed the district court that the State Crime Lab had not provided documents relevant to the DNA evidence and that it would take a week for the records to be delivered from the archives. The prosecutor asked that the trial again be continued, expressing concern about potential for a future ineffective assistance of counsel claim from Mr. Younge because he feared that the thirteen days until the scheduled trial date would not provide adequate time for defense counsel to review the records. Defense counsel objected, but the court continued the trial to December and it was later scheduled to begin on December 11. The day after the original trial date of November 9, Mr. Younge moved to dismiss his charges, arguing that he had been denied his right to a speedy trial. After hearing argument on the motion, the court took the matter under advisement.

¶ 9 Mr. Younge's trial began on December 11 and lasted for four days. On the first day of trial, the court denied Mr. Younge's speedy trial motion. A jury convicted Mr. Younge of all charges. The district court sentenced Mr. Younge to consecutive prison terms of fifteen years to life for both counts of aggravated sexual assault and one to fifteen years for robbery. Mr. Younge appealed. He contends that the statute of limitations had run before the commencement of

his prosecution and alternatively that his right to a speedy trial has been violated.

## STANDARDS OF REVIEW

■■■ ¶ 10 The issue of whether Mr. Younge's prosecution was commenced within the applicable statute of limitations presents a question of law that we review for correctness.[3] Whether the district court erred when it denied Mr. Younge's motion to dismiss for violation of his right to a speedy trial is also a question of law reviewed for correctness.[4]

## ANALYSIS

### I. MR. YOUNGE WAS PROSECUTED WITHIN THE APPLICABLE STATUTE OF LIMITATIONS

¶ 11 Before trial, Mr. Younge brought a motion to dismiss contending that his prosecution was not commenced within the applicable statute of limitations. As the basis for this argument, Mr. Younge alleged that the first information, which identified a John Doe defendant by DNA profile, was inadequate and the amended information was not filed within the statute of limitations. The district court ruled on the first day of trial that the first information was "constitutionally []valid" and, in the alternative, that the amended information was valid because the statute of limitations was tolled from March 1999 until Mr. Younge was extradited in February 2009 while Mr. Younge was outside the jurisdiction of Utah.[5]

■■■ ¶ 12 Mr. Younge alleges that the first information did not meet the requirements for a valid charging document because it did not identify him by name.[6] We disagree.

3. *State v. Canton*, 2013 UT 44, ¶¶ 8–9, 308 P.3d 517.

4. *State v. Steele*, 2010 UT App 185, ¶ 14, 236 P.3d 161.

5. *See* Utah Code § 76-1-304(1) ("The period of limitation does not run against any defendant during any period of time in which the defendant is out of the state following the commission of an offense.").

6. While we interpret the rules and statutes in place at the time of the offense, our analysis in this decision relates to charging documents filed within a rather narrow window of time because the Utah Legislature has since explicitly allowed for the filing of an information charging a defendant by DNA profile. *See* Utah Code § 76-1-302(3); 2003 Utah Laws 391. Therefore, our analysis is focused on whether the State was foreclosed by the law at the time of the attack against R.C. from charging a defendant by DNA profile.

The Utah Code of Criminal Procedure defines a "criminal action" as "the proceedings by which a person is charged, accused, and brought to trial for a public offense."[7] The Utah Rules of Criminal Procedure require that to initiate a criminal action, "[u]nless otherwise provided, all criminal prosecutions ... shall be commenced by the filing of an information or the return of an indictment."[8] An information is "an accusation, in writing, charging a person with a public offense which is presented, signed, and filed in the office of the clerk where the prosecution is commenced pursuant to Section 77–2–1.1."[9] The Rules of Criminal Procedure mandate that

[a]n indictment or information shall charge the offense for which the defendant is being prosecuted by using the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge. An information may contain or be accompanied by a statement of facts sufficient to make out probable cause to sustain the offense charged where appropriate.[10]

¶ 13 While the Rules of Criminal Procedure require that the information "charg[e] a person,"[11] there is no specific requirement as to how the individual to be charged is identified other than that "[a]n indictment or information shall not be held invalid because any name contained therein may be incorrectly spelled or stated."[12]

¶ 14 The only challenge Mr. Younge raises as to the sufficiency of the first information is that it did not identify him by name, and therefore violated his right to due process under the Utah Constitution. Mr. Younge alleges that his "right to notice is guaranteed by article I, section 12 of the Utah Constitution."[13] However, an information "is an accusation against a person, and not against a name. A name is not the substance of an indictment."[14] Section 77–1–3 requires that the information "charg[e] a person" but does not require that the individual be charged by name. And a DNA profile "is as close to an infallible measure of identity as science can presently obtain."[15]

¶ 15 With regard to Mr. Younge's due process challenge, a statute of limitations "is a statutory creation and affords no positive rights of constitutional dimension.... [T]he statute is not a source of constitutional liberties, nor does it by its own terms require actual or constructive notice to a defendant in order to be satisfied."[16] Neither the Utah Code nor the Utah Rules of Criminal Procedure require that actual or constructive notice be provided to a defendant before the commencement of a prosecution.[17] While the Utah Constitution "requires that the accused be given sufficient information so that he [or she] can know the particulars of the alleged wrongful conduct and can adequately prepare his [or her] defense,"[18] we have explained that an information may be "an extremely summary statement of the charge, that would not provide the accused with sufficient particulars to prepare an adequate defense."[19] To protect the rights of the charged individuals, defendants are entitled

---

7. Utah Code § 77–1–3.

8. Utah R. Crim. P. 5(a); see also Utah Code § 77–2–2(3).

9. Utah Code § 77–1–3(3); see also Utah Code § 77–2–1.1 (listing the requirements for the signing and filing of an information).

10. Utah R. Crim. P. 4(b).

11. Utah Code § 77–1–3(3).

12. Utah R. Crim. P. 4(f).

13. Article I, section 12 of the Utah Constitution protects the "rights of accused persons."

14. State v. Danley, 138 Ohio Misc.2d 1, 5, 853 N.E.2d 1224 (Ct.Com.Pl.2006) (internal quotation marks omitted).

15. People v. Robinson, 47 Cal.4th 1104, 104 Cal. Rptr.3d 727, 224 P.3d 55, 80 (2010).

16. Commonwealth v. Dixon, 458 Mass. 446, 938 N.E.2d 878, 886 (2010).

17. See Utah Code § 77–1–3(3); Utah R. Crim P. 4(b).

18. State v. Bell, 770 P.2d 100, 103 (Utah 1988) (alterations in original) (internal quotation marks omitted).

19. Id. at 104 (internal quotation marks omitted).

to request a bill of particulars in instances when the charging document is not detailed enough to provide adequate information for the preparation of a defense.[20]   Therefore, the first information, which charged a John Doe defendant by DNA profile, was valid and did not violate Mr. Younge's right to due process under the Utah Constitution.   Because we determine the first information was valid, we need not address Mr. Younge's challenges to the amended information, and therefore do not need to address the tolling of the statute of limitations.

## II.  MR. YOUNGE'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED

■■■■   ¶ 16 Mr. Younge also challenges the district court's ruling that his right to a speedy trial under the Sixth Amendment to the United States Constitution was not violated.[21]   The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." [22]   The "right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." [23]   The right "does not arise until there has been an indictment or information, as the applicable statute of limitations is controlling as to the time within which an indictment or information must be brought." [24]   And when a defendant's right

has been violated, it "leads to the unsatisfactorily severe remedy of dismissal of the indictment." [25]

■■■■   ¶ 17 The appropriate analysis for a speedy trial claim comes from the United States Supreme Court decision in *Barker v. Wingo* and involves a four-factor "balancing test, in which the conduct of both the prosecution and the defendant are weighed." [26] The *Barker* factors are, "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." [27]   No specific factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial" because "they are related factors and must be considered together with such other circumstances as may be relevant." [28]   While "these factors have no talismanic qualities," we must "engage in a difficult and sensitive balancing process." [29]

### A.   The Length of the Delay was Extraordinary and Weighs in Favor of Mr. Younge

■■■■   ¶ 18 "The length of the delay is to some extent a triggering mechanism." [30] "If the delay is not uncommonly long, the inquiry ends there." [31]   The Supreme Court suggested in *Doggett v. United States* that a delay approaching one year is presumptively

---

**20.**   Utah R. Crim. P. 4(e) ("When facts not set out in an information or indictment are required to inform a defendant of the nature and cause of the offense charged, so as to enable him to prepare his defense, the defendant may file a written motion for a bill of particulars.").

**21.**   The Utah Constitution similarly guarantees the right to a speedy trial.   Utah Const. art. I, § 12;   Utah Code § 77–1–6(1)(f), (h).   Challenges under the Utah Constitution are evaluated similarly to federal challenges.   *State v. Trafny,* 799 P.2d 704, 708 (Utah 1990).

**22.**   U.S. Const. amend. VI.

**23.**   *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (citing *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)).

**24.**   *State v. Renzo,* 21 Utah 2d 205, 443 P.2d 392, 394 (1968) (quoting *Bruce v. United States,* 351 F.2d 318, 320 (5th Cir.1965)).

**25.**   *Barker,* 407 U.S. at 522, 92 S.Ct. 2182.

**26.**   *Id.* at 530, 92 S.Ct. 2182.

**27.**   *Id.; see also Doggett v. United States,* 505 U.S. 647, 651–54, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (applying the four-factor test from *Barker*).

**28.**   *Barker,* 407 U.S. at 533, 92 S.Ct. 2182.

**29.**   *Id.*

**30.**   *Id.* at 530, 92 S.Ct. 2182;   *see also Doggett,* 505 U.S. at 651–52, 112 S.Ct. 2686.

**31.**   *United States v. Grimmond,* 137 F.3d 823, 827 (4th Cir.1998) (citing *Doggett,* 505 U.S. at 652, 112 S.Ct. 2686 (stating that "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial right if it has, in fact, prosecuted his case with customary promptness")).

prejudicial.[32] In this case, the delay between the filing of the first information in March 2000 and the trial in December 2009 was undeniably "extraordinary."[33] Therefore, with this factor met and weighing against the State, we turn to an examination of the remaining three factors.

### B. The Reason for the Delay Weighs Against Mr. Younge

¶ 19 In considering the reason for the State's delay "we must keep in mind that 'different weights should be assigned to different reasons.'"[34] The Supreme Court has recognized that there are reasons for delay which are improper,[35] and such delays are "weighted heavily against the government."[36] While there are more neutral reasons for delay, such as "overcrowded court dockets or understaffed prosecutors,"[37] "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[38] Lastly, valid reasons, such as a missing witness, are weighted in favor of the government.[39]

We first consider the delay between the filing of the first information and the amended information. We determine that this reason weighs in favor of the State. The State was unaware of and unable to determine Mr. Younge's identity. The State timely collected what information it could (Mr. Younge's DNA) after the attack and entered it into CODIS. The State then acted quickly after Mr. Younge's identity was discovered. Salt Lake City police officers flew to Illinois as soon as the crime lab was notified of a match in CODIS to collect a blood sample. The crime lab quickly tested the blood sample. Once the match was confirmed, the State filed the amended information. Therefore, the delay during this timeframe was through no fault of the prosecution and not the result of overcrowded courts or negligence on the part of the State.[40]

¶ 21 Second, with regard to the delay between the amended information and Mr. Younge's extradition to Utah, the district court determined that Mr. Younge's incarceration in the Illinois jail on charges of aggravated murder and attempted homicide "warranted" the delay of his prosecution in this case. We agree and determine that this delay weighs in favor of the State. "When a defendant violates the laws of several different sovereigns ... at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile. Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay."[41]

¶ 22 Third and finally, we turn to the nine-month delay that occurred after Mr. Younge was extradited to Utah. In *Doggett*, the Supreme Court explained that a delay by the

32. 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (addressing a delay of eight and one-half years). *See also United States v. Watford*, 468 F.3d 891, 901 (6th Cir.2006) (considering a delay of sixty-nine months); *Grimmond*, 137 F.3d at 828 (addressing a delay of thirty-five months).

33. *Barker*, 407 U.S. at 533, 92 S.Ct. 2182.

34. *Grimmond*, 137 F.3d at 828 (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182).

35. *See, e.g., United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (finding there was "no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them").

36. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

37. *Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

38. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

39. *Id.*

40. *Id.*

41. *Grimmond*, 137 F.3d at 828; *see also White v. United States*, 484 A.2d 553, 557–58 (D.C.1984) ("A review of the record below reveals, however, that approximately six and one-half months of the delay in this case was the result of the defendant's unavailability due to the pendency of charges against him in Maryland. This time is counted against appellant, not against the government."); *United States v. Schreane*, 331 F.3d 548, 554–55 (6th Cir.2003) ("Customarily—although certainly not always—the jurisdiction with custody of the accused ... is afforded the first opportunity to prosecute the defendant. This longstanding practice is rooted in the respect accorded to a custodial sovereign to resolve its criminal proceedings before relinquishing custody to another jurisdiction."); *Watford*, 468 F.3d at 902–03 (same).

State to "gain some impermissible advantage at trial" is a "bad-faith delay." [42] The nine-month delay before trial in this case, during which time Mr. Younge filed four motions for consideration by the court, was permissible. The court had to balance genuine scheduling conflicts, adequate time for motion practice, and a delay to hedge against a potential claim of ineffective assistance of counsel after the prosecution realized that the Utah State Crime Lab required more time to turn over documents. The amount of time between Mr. Younge's extradition and his trial was not a tactical delay on the part of the State. Therefore, we conclude that the delay in Mr. Younge's prosecution weighs in favor of the State and against Mr. Younge.

### C. The State Complied with Mr. Younge's Speedy Trial Demands to the Extent Possible

¶ 23 The third factor is "whether, in due course, the defendant asserted his right to a speedy trial." [43] Mr. Younge argues that he was not informed of the charges until he was extradited to Utah following the dismissal of his charges in Illinois. The Utah prosecutors mailed the amended information and corresponding warrant in September 2002 to the jail in Illinois where Mr. Younge was being held. While Mr. Younge contends that he never received the documents, the district court found that Mr. Younge likely was aware of the pending charges in Utah but chose to "adopt[ ] a wait and see approach with respect to the Illinois matters" that "very much inured to his benefit with the dismissal of [those] matters."

¶ 24 In any event, whether Mr. Younge actually received the amended information and arrest warrant is ultimately immaterial to our analysis. Even had Mr. Younge received the documents and asserted his speedy trial rights before he was extradited, Utah prosecutors could no sooner have prosecuted because it was "wait[ing] its turn at the prosecutorial turnstile" while Mr. Younge was held in Illinois. [44] Therefore, while Mr. Younge asserted his right to a speedy trial

after his extradition, that delay was not unduly burdensome. As a result, this factor weighs in favor of the State.

### D. Mr. Younge was not Prejudiced by the Delay

¶ 25 The final *Barker* factor is prejudice. In *Barker*, the Supreme Court identified three different forms of prejudice that the speedy trial right serves to protect against: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." [45] Mr. Younge does not argue that he suffered from the first two types of prejudice.

¶ 26 Mr. Younge alleges that the delay left him "without the benefit of at least one witness's testimony." At the time of the attack against R.C. in November 1996, Mr. Younge lived with his then-girlfriend. By the time of trial, Mr. Younge's former girlfriend could not recall the events of the night R.C. was attacked. She could not recall whether Mr. Younge owned the type of down parka that R.C. had identified to police after the attack. While Mr. Younge argued that his former girlfriend remembered that he often wore a leather jacket and did not remember him owning another type of winter coat, he contended that any potentially exculpatory evidence that may have come from her testimony had "been lost."

¶ 27 Mr. Younge also argues that he was not able to effectively cross-examine the State's witnesses regarding the transportation and testing of the DNA evidence. He also argues that there are an unknown number of potential witnesses that could have provided exculpatory testimony, either "neighbors [that] would have been aware and may have heard or witnessed something helpful to the defense" or "[o]ther witnesses, such as Younge's friends and associates ... [that] may have been with Younge or known about Younge's whereabouts, wardrobe, or

---

**42.**  505 U.S. at 656, 112 S.Ct. 2686.

**43.**  *Id.* at 651, 112 S.Ct. 2686.

**44.**  *See Grimmond,* 137 F.3d at 828.

**45.**  *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

appearance at the time of the alleged offense."

¶ 28 First, we again clarify that the delay before Mr. Younge was extradited cannot be strictly held against the State. As discussed above, the prosecutors in Utah were unable to initially identify Mr. Younge. After identifying Mr. Younge, the delay while Mr. Younge was awaiting charges in Illinois was justified because of the pending prosecution there. Second, we do not find Mr. Younge's substantive arguments compelling. Contrary to his arguments, we do not believe that the jury "would have acquitted but for the loss of" the potential testimony he lost as a result of the passage of time. The DNA evidence presented in this case was compelling. Despite Mr. Younge's challenges to that evidence, the State refuted those challenges and Mr. Younge failed to present any contradictory expert testimony. Therefore, Mr. Younge was not prejudiced by the delay in the State's prosecution.

¶ 29 On balance, Mr. Younge cannot demonstrate that his right to a speedy trial was violated under the *Barker* factors. While the delay in this case was undeniably extraordinary, the vast majority of that delay was beyond the State's control. The remaining three factors weigh in favor of the State and against Mr. Younge.[46]

### CONCLUSION

¶ 30 The first information filed by the State identifying R.C.'s unknown assailant by his DNA profile was valid. Therefore, we affirm the district court's determination that the prosecution was commenced within the statute of limitations. Mr. Younge's right to a speedy trial was not violated. While this case involved an extraordinary delay, this delay was not the fault of the State and Mr. Younge was not prejudiced. Therefore, we affirm Mr. Younge's convictions.

Associate Chief Justice NEHRING authored the opinion of the Court, in which Chief Justice DURRANT, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

---

**46.** *See State v. Ossana,* 739 P.2d 628, 630 (Utah 1987) ("There is no question that the 54–month delay between arrest and trial raises legitimate questions concerning the speedy disposition of defendant's case. However, when this delay is balanced with the other factors, the delay was insufficient to unconstitutionally deny defendant his right to a speedy trial.").