2022 UT App 29

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SEAN GLEN THOMPSON-JACOBSON,
Appellant.

Opinion
No. 20190743-CA
Filed March 10, 2022

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 061401133

Emily Adams, Freyja Johnson, Cherise Bacalski, and
Benjamin Miller, Attorneys for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and DIANA HAGEN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Sean Glen Thompson-Jacobson appeals his convictions of
two counts of aggravated sexual abuse of a child. We conclude
that the State violated his constitutional right to a speedy trial by
waiting nearly seven years to bring him to Utah to face those
charges. In denying Thompson-Jacobson's speedy trial motion,
the district court relied on the fact that he had been incarcerated
on separate charges in Nevada. But as the State properly
concedes, his incarceration did not relieve the State of its
obligation to use available legal means to secure his presence in
Utah. Because the relevant factors weigh in favor of Thompson-
Jacobson's speedy trial claim, we reverse the district court's

decision, vacate his convictions, and remand for entry of an order dismissing the charges.

BACKGROUND

¶2     In 1998, while Thompson-Jacobson was left alone with his niece and nephew, an incident occurred in which the children touched Thompson-Jacobson's genitals. Although Thompson-Jacobson told his mother (Grandmother) and the children's parents (Mother and Father) about the incident, he told them that the children pulled down his pants and touched him because "they thought it was funny" and that he told them to stop. Mother recalled that after hearing about what happened, Father called either an "abuse hotline" or the "Utah County Sheriff." However, the Utah County Sheriff had no record of a report. Additionally, Grandmother reported the incident to the Division of Child and Family Services (DCFS), but DCFS took no further action because it did not consider the incident, as reported, to evidence sexual abuse. Father died in February 2007.

¶3     On February 7, 2006, a detective in Nevada interviewed Thompson-Jacobson while investigating an unrelated report that Thompson-Jacobson was involved in inappropriate behavior with another child in Nevada. In the course of that interview, Thompson-Jacobson mentioned the incident with his niece and nephew eight years before, and the detective asked him about it. The details Thompson-Jacobson revealed at that time raised questions about the accuracy of the relatively innocuous story he had told Grandmother, Mother, and Father. The detective arrested Thompson-Jacobson in connection with the incident in Nevada and sent a copy of the interview to police officers in Utah. Eventually, Thompson-Jacobson was convicted of attempted lewdness with a minor in Nevada and was incarcerated in the Nevada State Prison from August 2006 to April 2013.

¶4 On March 21, 2006, the State of Utah filed an information against Thompson-Jacobson charging him with two counts of aggravated sexual abuse of a child. Based on the charges, the Fourth District Court issued an arrest warrant the next day, authorizing extradition from adjacent states. The warrant was entered into local and national law enforcement databases. At the time the charges and arrest warrant were filed, Utah officials knew that Thompson-Jacobson was incarcerated in Nevada. However, while he was serving his prison sentence in Nevada, it does not appear that Utah officials ever attempted to lodge a detainer under the Interstate Agreement on Detainers, *see* Utah Code Ann. § 77-29-5 (LexisNexis 2017), or take steps to extradite Thompson-Jacobson to Utah, *see id.* § 77-30-5.

¶5 In July 2009, Thompson-Jacobson, who was unrepresented in the Utah case, sent a letter to the Utah court requesting "a motion to dismiss form," information about his case, and "a list of all the criminal defense forms." The court sent a copy of the letter to the Utah County Attorney. Thompson-Jacobson never received a response to this letter.

¶6 On April 22, 2013, Thompson-Jacobson was released from prison in Nevada. Shortly thereafter, he was arrested in Nevada on the Utah warrant, and on May 22, 2013, Utah received notice that he was being held and had refused to sign a waiver of extradition. The State of Utah immediately began the process of obtaining a Governor's warrant, and Thompson-Jacobson was extradited to Utah on August 27, 2013. On September 3, 2013, more than seven years after charges were filed against him in Utah, Thompson-Jacobson made his initial appearance in a Utah court and was appointed counsel. Thompson-Jacobson moved to dismiss the charges on the ground that his constitutional right to a speedy trial had been violated. The court denied the motion, concluding that the four factors used to identify a speedy trial violation, on balance, weighed against Thompson-Jacobson. Although the court acknowledged that the length of the delay

weighed in Thompson-Jacobson's favor, the court ruled that the remaining factors did not because (1) the reason for the delay was Thompson-Jacobson's "own misconduct," that is, his "violation of the laws of Nevada that resulted in his incarceration and the attendant difficulties"; (2) Thompson-Jacobson did not assert his right to a speedy trial while incarcerated; and (3) any prejudice created by the delay was the result of Thompson-Jacobson's own actions landing him in prison in Nevada.

¶7     Following trial, the jury convicted Thompson-Jacobson of both counts of aggravated sexual abuse of a child. However, sentencing was delayed for a year because the court found that Thompson-Jacobson was not competent to proceed.[1] After Thompson-Jacobson was restored to competency, the court sentenced him to two consecutive terms of five-years-to-life imprisonment, with credit for the time served in Nevada. Thompson-Jacobson remains incarcerated and appeals his convictions.

ISSUE AND STANDARD OF REVIEW

¶8     Thompson-Jacobson asserts that the State of Utah violated his constitutional right to a speedy trial by waiting until his incarceration in Nevada had ended to bring him to Utah to

---

1. Thompson-Jacobson was diagnosed with schizoaffective disorder and borderline intellectual functioning in 1997, he received mental health treatment between 1996 and 2005 in response to his auditory hallucinations and belief that he was the Messiah, and his intelligence falls in the 27th percentile. A competency evaluator opined that, even with medication, Thompson-Jacobson lacked the ability to make rational decisions.

respond to the charges against him.[2] "We review the issue of whether a defendant was deprived of his right to a speedy trial for correctness." *State v. Hawkins*, 2016 UT App 9, ¶ 68, 366 P.3d 884.


ANALYSIS

¶9     The Sixth Amendment to the United States Constitution guarantees criminal defendants "the right to a speedy and public trial." U.S. Const. amend. VI. "[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Dickey v. Florida*, 398 U.S. 30, 38 (1970). And when the State unreasonably delays bringing an accused to trial and thereby violates a defendant's constitutional rights, the charges against the defendant must be dismissed. *See Strunk v. United States*, 412 U.S. 434, 440 (1973). However, the right is an "amorphous" one that does not lend itself to a strict rule. *Barker v. Wingo*, 407 U.S. 514, 522–29 (1972). Thus, to determine whether a defendant's speedy trial right has been violated, courts use a "balancing test" that weighs four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) any prejudice suffered by the defendant. *Id.* at 530. We address each in turn.

¶10    First, as the district court observed, the length of the delay in this case weighs in Thompson-Jacobson's favor. "The length of the delay is to some extent a triggering mechanism. If the delay is not uncommonly long, the inquiry ends there." *State v. Younge*, 2013 UT 71, ¶ 18, 321 P.3d 1127 (quotation simplified).

---

2. Thompson-Jacobson also challenged the district court's rulings on his motion to dismiss on statute-of-limitations grounds and his motion to suppress his police interview. However, we need not address these arguments in light of our ruling on his speedy trial issue.

"[T]he length of delay that will provoke [a speedy-trial] inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. However, as a general matter, a delay approaching one year is enough to trigger a speedy-trial inquiry. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *Younge*, 2013 UT 71, ¶ 18.

¶11 Beyond triggering the speedy-trial inquiry, "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim" is relevant because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. Here, the seven-and-a-half-year delay between the filing of the information and arrest warrant in the Utah court in March 2006 and Thompson-Jacobson's initial appearance in September 2013 far exceeds the triggering threshold for a speedy trial violation and strongly supports the conclusion that Thompson-Jacobson's speedy trial right was violated.

¶12 Second, in assessing the reasons for the delay, unlike the district court, we attribute the responsibility for the delay in bringing Thompson-Jacobson to trial primarily to the State. We conclude that Thompson-Jacobson, despite his actions landing him in a Nevada prison, cannot be held responsible for the majority of the delay.[3]

¶13 The reasons for a delay may be deliberate, neutral, or valid. *See Barker*, 407 U.S. at 531. Deliberate attempts to delay trial are "weighted heavily against the government." *Id.* More neutral reasons are "weighted less heavily," but the "ultimate

---

3. The State concedes that the district court's analysis of this factor was incorrect and that the factor weighs—at least slightly—in favor of Thompson-Jacobson. We commend the State for its candor.

responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* The State's negligence in prosecuting the case in a timely manner is an example of a neutral reason for delay. *See id.* Finally, a valid reason may justify a delay. *Id.*

¶14 For the first five months following the filing of the charges in Utah, Thompson-Jacobson's Nevada charges were pending and he was actively being prosecuted by the State of Nevada. "When a defendant violates the laws of several different sovereigns at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile." *Younge*, 2013 UT 71, ¶ 21 (quotation simplified). "Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." *Id.* (quotation simplified). Therefore, the delay in this case between the filing of the charges in Utah and Thompson-Jacobson's August 18, 2006 plea in the Nevada case was valid. Additionally, for four months prior to Thompson-Jacobson's appearance in Utah in September 2013, the State was diligently seeking to extradite him from Nevada. Thus, this delay was also valid.

¶15 However, with respect to the nearly seven-year stretch between August 2006, when Thompson-Jacobson pled guilty in Nevada, and May 2013, when he was finally arrested on the Utah warrant, there was no valid reason for the State to delay bringing Thompson-Jacobson to trial. Although the decision to seek extradition of a prisoner to stand trial or to lodge a detainer is discretionary, *see* Utah Code Ann. § 77-30-5 (LexisNexis 2017); *id.* § 77-29-5, the State's exercise of that discretion cannot "submerge the practical demands of the constitutional right to a speedy trial," *Smith v. Hooey*, 393 U.S. 374, 381 (1969). Thus, the State concedes, and we agree, that its failure to make any attempt to secure Thompson-Jacobson's presence to address the

Utah charges amounted to negligence, a neutral reason for delay for which responsibility ultimately rests with the government.[4] *See Barker v. Wingo*, 407 U.S. 514, 531 (1972). "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. "Consequently, we weigh this period of delay against the State." *See State v. Palacio*, 2009-NMCA-074, ¶ 19, 212 P.3d 1148.

¶16    Because a defendant has a responsibility to assert his right to a speedy trial, *see Barker*, 407 U.S. at 531, the third factor weighs against finding a speedy trial violation here. Thompson-Jacobson urges us to construe his 2009 letter to the court requesting legal forms as an assertion of his speedy trial right. But as the district court pointed out, Thompson-Jacobson's "letter in no way refers to the timeliness of the prosecution or the speed of the prosecution" and "did not communicate any [timeliness] concern sufficient for the letter to be considered an assertion of his right to a speedy trial." While we acknowledge the difficulty faced by Thompson-Jacobson in asserting his right to a speedy trial without the assistance of counsel, those difficulties do not allow us to construe his letter as an assertion of a right that was neither mentioned nor alluded to. We agree with the district court that construing Thompson-Jacobson's letter as a request for a speedy trial "would set poor precedent" and ultimately imply that "any ex-parte communication with the court would constitute an assertion of the speedy trial right" by "indicat[ing] a desire to move forward with the prosecution." Thus, we agree with the State that Thompson-Jacobson did not adequately assert his right to a speedy trial.

---

4. Thompson-Jacobson does not assert that any delay was deliberate.

¶17    Nevertheless, we do not afford this factor much weight in light of the circumstances limiting Thompson-Jacobson's ability to assert his right. Thompson-Jacobson had no appointed counsel for the Utah case while incarcerated in Nevada. Moreover, Thompson-Jacobson suffered from competency issues and is of below-average intelligence. Thus, he faced significant barriers to pursuing his defense or asserting his speedy trial right. The Supreme Court has specifically rejected the proposition "that a defendant who fails to demand a speedy trial forever waives his right." *Id.* at 528. While defendants do have at least some responsibility to assert their right, the "failure to assert [the] right to a speedy trial is" only "one of the factors to be considered." *Id.* Specifically, there is a difference between "a situation in which the defendant knowingly fails to object" and one in which the defendant's "attorney acquiesces in long delay without adequately informing [the] client" or one "*in which no counsel is appointed*." *Id.* at 529 (emphasis added). Here, Thompson-Jacobson promptly asserted his right to a speedy trial once counsel was appointed but did not do so in the prior seven years during which he argues the State unreasonably delayed bringing him to trial. Thus, while this factor weighs against Thompson-Jacobson, it does not foreclose his speedy trial claim.

¶18    Finally, the fourth factor—prejudice—weighs in favor of Thompson-Jacobson. The prejudice analysis takes into account the interests "the speedy trial right was designed to protect," namely, "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532. The prejudice inquiry can also be impacted by the first factor—length of delay—because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett v. United States*, 505 U.S. 647, 652 (1992).

¶19    Thompson-Jacobson asserts two arguments regarding prejudice. First, he claims that the State's seven-and-a-half-year

delay in bringing him to Utah to respond to the charges impaired his ability to present his statute of limitations defense, and second, he claims that he suffered general prejudice in the form of "anxiety and concern" and impairment of his defense. *See Barker*, 407 U.S. at 532.

¶20 Thompson-Jacobson first argues that the delay impaired his ability to present his statute of limitations defense because of Father's death in February 2007. Thompson-Jacobson maintains that Father would have testified he had reported the incident with the children to police in 1998 and that this testimony would have established that the four-year statute of limitations began to run at that time.[5] *See* Utah Code Ann. § 76-1-303.5 (Michie Supp. 1996) (setting the statute of limitations for aggravated sexual abuse of a child as "four years after the report of the offense to a law enforcement agency"). The State asserts that Thompson-Jacobson was not prejudiced because Father was not a reliable witness due to his suffering from drug use and paranoia toward the end of his life. Additionally, because Father died only six months after Thompson-Jacobson was convicted in the Nevada

---

5. Thompson-Jacobson moved to dismiss his charges on the grounds that the statute of limitations had run, and the court denied the motion after finding that the evidence showed the incident was not reported to a law enforcement agency until 2006. *See State v. Green*, 2005 UT 9, ¶¶ 42–43, 108 P.3d 710 (explaining that a "report" is "a communication made for the purpose of alerting law enforcement to the existence of criminal conduct" and that the reported "offense" must articulate "criminal conduct" to "a degree . . . sufficient to permit a law enforcement agency to conclude what was done and who did it without additional investigation or analysis"). Although Thompson-Jacobson appeals this ruling as well, we need not address his challenge because we ultimately vacate his convictions due to the violation of his speedy trial right.

case, the likelihood that he would have been able to obtain Father's testimony before his death is questionable. We share the State's skepticism about whether Thompson-Jacobson would have been able to obtain helpful evidence from Father. However, our analysis of this factor ultimately does not turn on the success of this specific claim of prejudice because the generalized prejudice to Thompson-Jacobson, exacerbated by the length of the delay, ultimately leads us to weigh this factor in his favor.

¶21 Although Thompson-Jacobson does not point to any other particular examples of how he has individually suffered prejudice, either in terms of emotional strain or in terms of impairing his defense, the Supreme Court has not required such "affirmative proof of particularized prejudice." *Doggett*, 505 U.S. at 655. Rather, these forms of prejudice may, in many instances, be presumed. *Id.*; *see also Strunk v. United States*, 412 U.S. 434, 439 (1973) ("The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving— uncertainties that a prompt trial removes.").

¶22 The Supreme Court has recognized that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." *Doggett*, 505 U.S. at 655 (quotation simplified). Thus, "excessive delay presumptively compromises the reliability of a trial," and "[w]hile such presumptive prejudice cannot alone carry a Sixth Amendment claim . . . , it is part of the mix of relevant facts." *Id.* at 655–56. Thus, this factor weighs in Thompson-Jacobson's favor.

¶23 Examining all four of these factors and considering them in the light of all the circumstances, we conclude that the State of Utah violated Thompson-Jacobson's speedy trial right by

waiting for seven-and-a-half years to take action on the charges filed in 2006.

¶24 A court's "toleration of . . . negligence varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial." *Id.* at 657 (quotation simplified). Likewise, the "importance" of the prejudice the defendant suffered "increases with the length of delay." *Id.* at 655–56; *see also id.* at 657–58 (concluding that an eight-and-a-half-year lag between indictment and arrest warranted a presumption of prejudice where the "prejudice, albeit unspecified," was "neither extenuated . . . nor persuasively rebutted"). And "the possibilities that long delay will impair the ability of an accused to defend himself are markedly increased when the accused is incarcerated in another jurisdiction." *Smith v. Hooey*, 393 U.S. 374, 379 (1969) (quotation simplified). "Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, [the defendant's] ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired." *Id.* at 379–80. And such impairment is even more pronounced when the accused lacks counsel, as Thompson-Jacobson did here.

¶25 Although Thompson-Jacobson did not effectively assert his right to a speedy trial, his ability to assert his right was impaired by his lack of counsel—which in turn was the direct result of the State's failure to bring him before a Utah court—and his limited competence. And while the State did not act deliberately to delay prosecuting Thompson-Jacobson, its negligence in failing to bring him to Utah persisted for nearly seven years. During this time, he was unable to prepare his defense or act to preserve evidence, and he was subject to the concerns and anxiety of awaiting a future prosecution and an uncertain outcome. Having balanced the speedy trial factors, we are convinced that they demonstrate a violation of Thompson-

Jacobson's constitutional right to a speedy trial. Therefore, we reverse the district court's order denying his motion to dismiss.

## CONCLUSION

¶26    "[S]evere remedies are not unique in the application of constitutional standards." *Strunk v. United States*, 412 U.S. 434, 439 (1973). Because we conclude that the State violated Thompson-Jacobson's right to a speedy trial, and "in light of the policies which underlie the right," *see id*. at 440, we have no choice but to vacate his convictions and remand for the district court to dismiss the charges.

———————